STATE OF IOWA v. CHARLES B. SWAFFORD, Appellant.

**Perjury:** MATERIALITY OF EVIDENCE: *Proving truth.* Bane alleged that, while a chaste woman, Murphy seduced her, and that as a result she was delivered of a child in April, 1894, which was met by a general denial. Swafford testified that he had intercourse with her on July 4, 1893, which Bane denied. If Swafford swore truly, the child may have been his. An indictment, charging that Swafford perjured himself, averred that he had no intercourse with Bane on July 4, 1893, *or any other time. Held:*

a. If it be conceded that this testimony would not be material, had issue arisen on a complaint alleging seduction alone, and a general denial,— for the reason that it would then go to chastity only, and chastity being presumed, pleading it was surplusage as to which the general denial raised no issue— yet, as pregnancy was also alleged, in aggravation of damages, as it might be, paternity became material, and so did this testimony, as bearing on that question.

b. No claim being made that swearing that the connection was had on July 4, 1893, was due to mistake, the truth of the alleged false oath cannot be shown by evidence of intercourse had *later* than that day, notwithstanding said negative averment in the indictment. False testimony as to intercourse on that day was material on the question of paternity. Such testimony as to a later day might not be.

c. Defendant may show, to establish the truth of the oath charged to be false, that he had opportunity to do what he swore he did do.

GIVEN, J., dissenting, holds, that while this might be done to rebut testimony of want of opportunity, it is not original as admissible evidence.

COURT AND JURY. The materiality of the evidence on the giving of which perjury is charged is, on prosecution therefor, a question of law.

**Privileged Communication.** One charged with testifying falsely to having had sexual intercourse with a certain woman, met her, her father and her attorney. During their conference he made certain declarations. Certain plans were then debated looking to some modification of said testimony, so that it would cease to operate against her securing employment    Defendant suggested that such modification might lead to his prosecution for perjury, whereupon the attorney promised, in that event, to defend him. *Held,* the declarations made before this promise was given are not privileged, and the attorney may testify as to them. *State v. Houseworth,* 91 Iowa, 740, *distinguished.*

**Appeal:** SETTING CONVICTION ASIDE. Defendant was charged with perjury in swearing, in a seduction case against another, to the material fact that at a certain time he had intercourse with the woman seduced; and he testified upon his prosecution for perjury that he had sworn to the truth. She testified positively that it was false, and was corroborated by admissions made to her attorney, and other admissions made in the presence of herself, her attorney, and her father. *Held,* that the verdict of guilty was not against the clear weight of evidence.

*Appeal from Johnson District Court.* — HON. M. J. WADE, Judge.

WEDNESDAY, MAY 20, 1896.

DEFENDANT was indicted, tried and convicted of the crime of perjury, and judgment of imprisonment in the penitentiary for two years entered against him, from which he appeals.—*Reversed.*

*Bailey & Murphy* and *George A. Ewing* for appellant.

*Milton Remley,* attorney general, *George W. Ball,* county attorney, and *Joe. A. Edwards* for the state.

GIVEN, J.—I. On the twenty-first day of March, 1894, Maud M. Bane filed her petition in the district court of Johnson county against T. E. Murphy, stating as her cause of action as follows: "That heretofore, to-wit, on and before the first day of September, 1893, she was an unmarried woman, of previously chaste character, a resident of Penn township, in Johnson county, Iowa, and of the age of majority; that on or about said first day of September, 1893, the defendant, for the purpose of injuring and destroying plaintiff's good name, happiness, and future comfort, did seduce and debauch the plaintiff, and did then and there cause her to be pregnant with child, all to the plaintiff's damage in the sum of $10,000." She asked judgment for that amount. The defendant Murphy answered denying generally; and thereafter, on the fourth day of June, 1894, the deposition of this defendant was taken in said action before O. A. Byington, a notary public, duly authorized to take the same. The charge is that defendant, Swafford, in giving his testimony before said notary, "willfully, corruptly, knowingly, falsely, and feloniously swore that he, the said Charles B. Swafford, had sexual intercourse with the said Maud M. Bane twice on the night of July 4, 1893, at her home."

II. To constitute perjury, said testimony of the defendant must have been to a material matter in the proceeding in which it was taken. Code, section 3936. Appellant contends that, under the issues joined in that case, said testimony was not to any material matter therein; that the presumption of law establishes *prima facie* the chaste character of the plaintiff in a seduction case, and therefore the averment of chastity in said petition was not essential to the cause of action, and need not have been alleged, and was not required to be proven, and therefore the general denial joined

no issue thereon. It is further argued that the character of the plaintiff in that case for chastity could only become material under a plea of a want of chastity in mitigation of damages, and as no such plea was made in that case, said testimony was immaterial. That the allegation that the defendant in that action caused the plaintiff to be pregnant with child was not essential to recovery, but might be shown in aggravation of damages by the plaintiff, and that the defendant might show in mitigation that the pregnancy was caused by another. These propositions may all be conceded; yet it remains clear, we think, that said testimony was to a material matter in that case. Concede that, upon an allegation of seduction alone, and a general denial, this testimony would have been immaterial under the presumption of chastity; yet we have the allegation of pregnancy, caused by the defendant in that action, in aggravation of damages, and his denial thereof. Upon this issue the paternity of the child was material. The child was born April 4, 1894; and on June 4, 1894, this defendant testified that he had sexual intercourse with that plaintiff on the night of July 4, 1893, just nine months prior to the birth of the child. Surely, his testimony was material upon the issue as to the amount of damages, if not as to the chastity of that plaintiff. Whether such evidence would be material, under an averment of seduction alone, and a general denial, we do not determine, as we regard it as material on the issue as to damages.

III. On this trial Maud M. Bane testified that the defendant never had sexual intercourse with her at any time or place. Thereafter the defendant testified in his own behalf, and, on his examination in chief, said: "I had sexual intercourse with Maud Bane that night [July 4, 1893] twice, in the house, on the sofa." Upon further examination he stated that

he saw Miss Bane on the first and also on the second Sunday after said fourth of July. He was then asked: "Did you, or not, have intercourse with Miss Bane on that occasion?" To this the state objected as immaterial, irrelevant, and incompetent, which objection was sustained, and of this appellant complains. His contention is that if he could show that he had sexual intercourse with her on or about the fourth day of July, 1893, he was not guilty of perjury in testifying as he did in said deposition. Appellant quotes from Whart. Cr. Law, section 1276, as follows; "If a witness be asked whether goods were paid for on a particular day, and he answers in the affirmative, if the goods were really paid for, though not on that particular day, it would not be perjury, unless the day be material." *Plath v. Braunsdorff*, 40 Wis. 111, is also cited, wherein the particular day on which a certain act was done was held not to be material.

The charge is, that the defendant testified falsely, that he had sexual intercourse with Maud M. Bane twice, on the night of July 4, 1893, and it is alleged, that he did not have sexual intercourse with her on said night, "nor at any other time, twice, nor once, nor at all." Whether, as a matter of pleading, that part of the negative averment that he did not have sexual intercourse with her at any other time, might be treated as surplusage, we need not determine. It is evident from the record, that the contention is, whether the defendant was guilty of perjury in swearing that he had intercourse with Maud M. Bane on the night of July 4, 1893. This, as we have said, was a material issue in the seduction case, and is an important issue in this. She testifies positively, that he did not have sexual intercourse with her on the night of July 4, 1893, and he again testifies as positively that he did. There is no pretense that, in testifying on either occasion, the defendant

was mistaken as to the day. The charge, the plea, and the proofs, all relate to July 4, 1893; hence the day is material, and what is said as to other times, is immaterial. Maud M. Bane testified in chief, on behalf of the state, that she saw the defendant on the fourth day of July, 1893, at her home, and that he did not have sexual intercourse with her on that day or night, nor at any other time. This was all the evidence offered by the state as to the time the defendant and Maud M. Bane were together on that day or night. Her further testimony in chief was solely as to the interview in Mr. Remley's office on the seventh day of August, 1894. On her cross-examination she testified as follows: "I was with Mr. Swafford on the night of July 4, 1893. In the daytime I was with him at the iron bridge, and returned home in the evening. We took our supper at home. After supper we went down to Linder's platform. I think we stayed there until about half past nine o'clock, and then Mr. Swafford and I returned home. There was nobody present at that time but Mr. Swafford and myself. I don't know how long Mr. Swafford stayed. I don't think he was there over an hour." The further cross-examination on this subject was as follows: "Q. And during that hour you and Mr. Swafford were there together alone? A. Not alone; no, sir. Q. Who else was there? (Same objection). Court: It may be answered, but the gentlemen understand my rule. Anything collateral to the main question inquired into that the cross-examination upon it is conclusive, that you can't call out a matter for the purpose of contradiction. A. Our folks came home about 15 or twenty minutes after we did; they were at Linder's. I think we left the platform at about half past nine o'clock; it wasn't later. And our folks got home may be 20 minutes after we did; not later than that. We had a team and buggy, and drove right home from the

dance. The horses trotted a good share of the way home." Albert Linder was called on behalf of the defendant, and having, without objection, stated that he saw Mr. and Mrs. Bane, Maud M. Bane, and the defendant on the night of the fourth of July, 1893, the following occurred upon his further examination: "Q. At what place did you see them? (Plaintiff objects as immaterial. Objection sustained. Defendant excepts). A. I live a half mile this side of where Mr. Bane lives. Had a dance at my place on the night of July 4th, 1893. Q. Did you see Mr. Bane's folks there? (Plaintiff objects as immaterial, incompetent, and irrelevant. Objection sustained. Defendant excepts). Q. Did you see Maud Bane and Mr. Swafford there that night? A. Yes, sir. (Same objection. Same ruling. Defendant excepts. State moves to strike out the answer. Motion sustained. Defendant excepts). Q. What time did Mr. Swafford and Miss Bane leave your place that night? (Plaintiff objects, as immaterial, irrelevant, and incompetent. Objection sustained. Defendant excepts). Q. What time that night did Mr. James Bane and Mrs. Bane leave there with reference to the time that Maud Bane and Mr. Swafford left there? (Plaintiff objects, as immaterial, irrelevant, and incompetent. Objection sustained. Defendant excepts). Q. Mr. Linder, isn't it true that Mr. Swafford, Miss Maud Bane, Mr. James Bane, and Mrs. James Bane, and Mr. Bert Bane, Mr. Earl Bane, and the younger children of Mr. James Bane and Mrs. James Bane, were at that dance that night, and that Mr. Swafford and Miss Maud Bane went away from there in a buggy, and that they left there in the evening about 9 o'clock or thereabouts, and that Mr. James Bane and Mrs. Bane and all the rest of the Bane family remained there at your place till between 12 and 1 o'clock on the night of July 4, 1893,—ain't that true? (Plaintiff objects, as immaterial, irrelevant, and incompetent, and for the

further reason that it is leading. Sustained, upon the ground that it is immaterial. Defendant excepts)." The purpose of this examination of Mr. Linder was evidently to show that the defendant and Maud M. Bane were alone together at her father's home for a longer time than she stated on her cross-examination, and thus not only to contradict her, but also to show that they had opportunity to have done what defendant swore they did. The evidence was admissible, if at all, either as original evidence on behalf of the defendant, or in rebuttal of something offered by the state, or in contradiction of Maud M. Bane, in her statements made upon her cross-examination. It is the opinion of the majority that, as this evidence tends to show that these persons were alone together for a sufficient length of time to have done what defendant swore they did do, it was admissible as original evidence on behalf of the defendant, and that the court erred in excluding it. It is the view of the writer that this evidence is immaterial, and was therefore properly excluded. All that it tends to prove is that these persons had an opportunity to have had sexual intercourse, as sworn to by defendant. Surely, no presumption that they were guilty of such conduct arises from the mere fact that they were together alone. Evidence of opportunity proves nothing, and is therefore immaterial. Evidence of want of opportunity would tend to show that defendant's statement in his deposition was false; and, had the state offered such evidence, then, and then only, would this evidence have been admissible in rebuttal.

IV. Milton Remley, Esq., who was attorney for Miss Bane, in her case against Murphy, was called by the state to testify to a conversation had with the defendant alone, shortly prior to August 7, 1894, concerning his relations to Miss Bane; also, to a

conversation had on August 7, between Miss Bane, her father, the defendant, and the witness. It appears that the testimony which the defendant had given, was in the way of Miss Bane's getting employment as a school teacher, and the persons named had met on August 7, in Mr. Remley's office, to see what, if anything, could be done to remove the difficulty. The defendant was allowed to examine Mr. Remley as to his relations as an attorney to the defendant. It appears that, in the course of the conversation on the seventh, different plans were proposed, to relieve Miss Bane from the effect of the defendant's testimony, in preventing her from getting employment as a teacher. When a certain plan was proposed, defendant said: "Then, suppose Murphy should undertake to prosecute me;" and it was agreed that in that event, Mr. Remley should act as his attorney in the matter. Defendant objected to Mr. Remley's testifying to anything that was said by the defendant on the seventh, because confidential and privileged. No objection was made to Mr. Remley's testifying to what the defendant said to him two or three weeks prior to August 7; nor could there be, as that conversation was in no sense confidential. Mr. Remley was permitted, over the defendant's objection, to testify to what was said in the conversation on the seventh, prior to the time he agreed to act as defendant's attorney in case he was prosecuted by Murphy. Mr. Remley declined to state any part of the conversation that occurred after he so agreed, and was not asked or required to do so. Defendant contends that the entire conversation is privileged, and cites *State v. Houseworth*, 91 Iowa, 740 (60 N. W. Rep. 221). In that case the question was whether confidential communications from a prosecuting witness to the county attorney were privileged. It was held that under our statute the relation of attorney

and client need not necessarily exist to render a confidential communication privileged. This court said: "While it is true that, as to attorneys, such communcations are oftener made by clients than by others, we do not think there is any such limitation upon the operation of the statute, but that it matters not from whom the communication is received, if it be to a practicing attorney in his professional capacity, and necessary for him to discharge the functions of his office." The communication testified to was not made in confidence to Mr. Remley. It was not made to him more than to the others present, upon whom no confidence was enjoined, and of whom it could not be required. Whether what was said in the presence of Miss Bane and her father after Mr. Remley's agreement to act as attorney for the defendant is privileged we do not determine, as no testimony was given in relation thereto. The communication was not to Mr. Remley in his professional capacity, nor was it necessary to enable him to discharge the functions of his office. The purpose of the interview was to devise some plan by which the effect of the defendant's testimony given in said deposition could be modified or removed, so as not to interfere with Miss Bane's getting a school. We do not think that it can be properly said that Mr. Remley was acting as an attorney in that matter, but, if it may, the element of confidence that is requisite to render the communication privileged is lacking.

V. Appellant's next contention is that the verdict is contrary to the evidence. The evidence is somewhat voluminous and conflicting, and would require more space to here set out, or to discuss in detail, than should be taken for that purpose. In *State v. Wise*, 83 Iowa, 596 (50 N. W. Rep. 59), it is said: "The rule in such cases is different from that applied in civil cases. This court, though proceeding carefully and cautiously, will interfere in criminal

cases more readily than in civil. We will not, in a criminal case, support a verdict if it be against the clear weight of the evidence." Guided by this rule, we have examined the evidence; and, while if it was before us to decide therefrom upon the defendant's guilt or innocence, we might reach a different conclusion from that arrived at by the jury, we cannot say that the verdict is contrary to the evidence. There is no doubt but that the defendant testified upon oath as alleged to what we hold to have been a material matter. Miss Bane swears positively that it was false, and in this she is corroborated by admissions made by the defendant to Mr. Remley prior to August 7, and on that day, in the presence of Miss Bane, her father, and Mr. Remley. There is other corroborating evidence, sufficient, we think, to sustain the finding that the defendant's statement in his deposition was false, and known to him to be so.

The petition and answer in the case of *Maud M. Bane v. T. E. Murphy*, was in evidence, and the court instructed that thereunder the matter testified to by the defendant in said deposition was material. Appellant contends that the question of materiality should have been left to the jury. Not so, we think. It was the province of the court to construe these pleadings, and to determine, as a matter of law, what the issues were. In *State v. Caywood*, 96 Iowa, 367 (65 N. W. Rep. 385), this court said: "The question of determining the materiality of the evidence offered in a case is always one for the court, and we can conceive of no reason why the same rule should not be applied when it becomes necessary to determine whether evidence offered upon the trial of another case was material. The following authorities abundantly sustain the correctness of the instruction: [Citing cases]."

VI.    Other  errors  than  those  discussed  were assigned.  We have examined them as best we could, unaided by argument, and fail to discover any errors therein prejudicial to the appellant.

We feel called upon, before  concluding this opinion, to express our disapproval of the remarks of counsel for appellant, in their argument, derogatory to the judge who presided at the trial, and to the prosecuting attorney.  We find nothing in the record to warrant these criticisms and insinuations.  Counsel should not pervert the privilege of legitimate argument to such a purpose, nor impose upon this court the reading of matter so entirely foreign to the merits of their case.

For error  pointed out in the third paragraph of this opinion, the judgment of the district court is REVERSED.