SHERMAN BATTIS, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

Personal injury: EVIDENCE: DECLARATIONS OF PAIN. In an action for
1 personal injuries, expressions or declarations of present, existing pain, whether made at the time of the injury or subsequently, are admissible whenever the physical or mental condition of the person injured is in issue.

Privileged communications. Where the relation of physician and pa-
2 tient exists, all communications relating to the physical or mental condition of the patient are privileged, even though sought to be shown for impeachment purposes.

Same. The physician of a railway company may properly visit one who
3 is injured, for the purpose of ascertaining his condition, but if he assumes to advise or administer treatment, which is acquiesced in, the relation of physician and patient attaches, and any communication as to the mental or physical condition of the patient is privileged.

Instruction: EJECTION OF PASSENGER FROM MOVING TRAIN. In an ac-
4 tion for injuries sustained by reason of a wrongful ejection of a passenger from a moving train, the instructions are reviewed and held erroneous, in that the jury was given no adequate guide for determining whether the act of the brakeman, in pushing plaintiff out onto the platform, was or was not wrongful; and also because the jury might have inferred that if plaintiff was pushed onto the platform defendant was liable irrespective of the cause of his fall from the train.

DEEMER, C. J., and WEAVER, J., dissenting.

*Appeal from Wayne District Court.*—HON. H. M. TOWNER, Judge.

WEDNESDAY, JULY 13, 1904.

ACTION to recover damages for a personal injury. It is claimed by plaintiff that on the night of September 29, 1899, he was a passenger on one of the defendant's passenger trains, and that when between Seymour and Harvard, in Wayne

county, and while the train was running at full speed, he was forcibly and without cause put off the same by the train brakeman; that, when so put off, he fell to the ground with great violence, and sustained injuries to his head, face, and back, as a result of which he has incurred expense for medical attendance, and suffered great physical pain and mental anguish, and has been prevented from performing any kind of manual labor. The answer of the defendant is a general denial. There was a jury trial, resulting in a verdict and judgment for plaintiff. The defendant appeals.—*Reversed.*

*Carroll Wright, J. I. Dille,* and *Miles & Steele,* for appellant.

*R. C. Poston* and *Freeland & Evans,* for appellee.

Bishop, J.—While upon the witness stand, plaintiff testified that he reached his home, in Allerton, about five o'clock the next morning after the occurrence in question. There-

1. Evidence: declarations of pain.

after his wife was called as a witness on his behalf, and was asked what, if anything, her husband said when he first came home with reference to suffering pain on account of his injuries. This was objected to, and the objection overruled. The witness answered that he requested to be helped to bed as quickly as possible; that " he complained of pain in his head, in the back of his neck, and in his arms. He said he was suffering lots of pain." The admission of such testimony is assigned as error. We think it was competent, under the rule announced in *Keyes v. City of Cedar Falls,* 107 Iowa, 509. In that case it is said (Deemer, J., speaking for the court): " The weight of reason and authority supports the rule admitting such evidence. * * * Whenever the physical or mental condition of a person is in issue, expressions or declarations of present, existing pain, whether made at the time the injury was received, or subsequently, are admissible in evidence. Such expressions and statements as to the location of the malady or pain are excep-

tions to the general.rule which excludes hearsay evidence, and they are admitted on the ground of necessity, as being the only means of determining whether pain or suffering is endured by another; and whether they are simulated or not is a question for the jury." With this statement of the rule now in force in this State we are content, and accordingly adhere thereto. But counsel for appellant further argues that, conceding such to be the present rule, it should be limited in its operation to exclamations of pain — to such expressions as are the result of pain — and should not be extended to include mere statements or declarations of the fact that pain exists. Such position is not in harmony with the language quoted from the opinion, nor the spirit of the rule. If the evidence offered be in the nature of a statement made by the person claiming to have been injured, declaratory merely of the fact that at the time of making such statement he is suffering pain or distress, we think the evidence is admissible under the rule. On the other hand, statements or declarations having reference to conditions in time past, and such as are purely recitative or descriptive in character, are not admissible, within the meaning of the rule.

II. As a witness, plaintiff testified that a fight occurred on the train, in which fight he was one of the participants; that during the same he was knocked down by some one, the **2. PRIVILEGED COMMUNICATIONS.** blow being sufficiently severe to produce immediate insensibility. He says he does not know how or from what cause he fell from the train; that, after being knocked down in the car, he did not regain his senses until about four o'clock the next morning, when he found himself in the depot at Seymour. Dr. Banning was called as a witness by defendant, and testified that, about eleven o'clock on the night of the occurrence in question, plaintiff was brought to his office for medical attention. The doctor was then interrogated with reference to the condition in which he found plaintiff, as to being conscious or unconscious; also whether or not plaintiff talked to persons who were in the

room in a general and intelligent way. To this plaintiff interposed an objection, based on section 4608 of the Code, and such objection was sustained. The Code provision invoked is as follows: "No practicing * * * physician * * * who obtains such information by reason of his employment * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice." All will agree that the manifest purpose of this statute is to make it possible for every person to fully and freely consult with a physician, or submit himself to the examination of such physician, without anticipation or fear that the confidence reposed may be broken in upon by a subsequent examination of the physician as a witness in some form of legal proceeding. This being true, the statute should have a liberal construction by the courts. Accordingly we have held that the expression "confidential communications," as used in the statute, is not to be restricted to the mere verbal statments made by the patient, but must be construed to include all knowledge or information acquired by the physician through his own observation or examination. *Prader v. Accident Ass'n,* 95 Iowa, 149; *Baxter v. Cedar Rapids,* 103 Iowa, 599; *Finnegan v. Sioux City,* 112 Iowa, 232. In the case at bar the interrogatories propounded to the physician were intended to elicit from him certain facts respecting the condition of plaintiff, and it is manifest that whatever knowledge the witness possessed was acquired from the statments made to him by plaintiff, and from his own examination and observation. Clearly in such a case the statute applies, and the privilege may be insisted upon.

Nor is the privilege taken away, as contended for, by the fact that while upon the witness stand, and elsewhere, plaintiff had stated that he was unconscious when taken to, and while he remained in, the office of the physician, and that the testimony sought to be elicited had relation solely to the con-

dition of plaintiff as to consciousness; the purpose thereof
being the impeachment of plaintiff as a witness.   In *McCon-
nell v. Osage,* 80 Iowa, 293, we said:   " It is not enough to
say that in some cases it [the testimony of the physician] may
operate to defeat the designs of falsehood.   Such a rule would
practically annul the provisions of the statute.   It cannot be
questioned that greater freedom as to such testimony would
in some cases work good results, and in others bad.   It is a
proper matter for legislative regulation, and, after consider-
ing the reasons for and against the rule, it has placed the obli-
gation of secrecy on the lips of the physician unless it is
removed by the party in whose interest it was so placed."
We are not to be regarded as overlooking the further conten-
tion of counsel for appellant in the case at bar to the effect
that the testimony here sought to be elicited did not relate to
any communication " necessary and proper to enable him to
discharge the functions of his office," etc.   It may be true,
possibly, that the knowledge acquired by the physician was
not, in point of fact, and strictly speaking, necessary and
proper to enable him to perform the functions of his office.
But of this we are not in position to judge, nor are we called
upon to determine what the fact might be when reduced to a
last analysis.   It was the condition of plaintiff that was the
subject of the inquiry, and it was the professional judgment
of the physician that was called for.   The privilege cannot
be subject to measurement by metes and bounds, and we may
well assume that all that was told to the physician, and all
that was developed by his examination or came under his ob-
servation, was necessary and proper for his understanding of
the condition of his patient.   The relation of physician and
patient being established, if by any fair intendment commu-
nications made have relation to the physicial or mental condi-
tion of the patient, we are bound to hold them privileged.   As
bearing upon the subject, see *Raymond v. Railway,* 65 Iowa,
152; *Finnegan v. Sioux City,* 112 Iowa, 232; *Nelson v.
Oneida,* 156 N. Y. 219; *Gartside v. Ins. Co.,* 76 Mo. 446 (43

Am. Rep. 765); *Association v. Beek,* 77 Ind. 203 (40 Am.
Rep. 295.) It follows from what we have said that there
was no error in rejecting the testimony offered.

III. Dr. Earnest, living at Seymour, was called as a
witness by the defendant. He testified that he was the local
surgeon of the defendant company; that about midnight of

8. SAME.

the day of the accident he was called by the sta-
tion agent, and went to the depot, where he saw
plaintiff. Thereupon the following: " Q. Did you ask
him as to his injuries? A. Yes, sir. Q. Were you called
there to do something for him? A. Yes, sir; I was
called there to see him. Q. You were called there to see
what, if anything, was the matter with him? A. Yes, sir.
Q. Did you treat him at all? A. I dressed one small wound.
Q. You were not called there for any other purpose than to
see what his injuries were? A. I was called to the depot to
see a man that was hurt. Q. Now, in asking him questions,
did he answer them, and did he do so intelligently and ration-
ally? Q. What, if anything, did plaintiff say in that con-
versation as to how he received the injuries of which he was
then complaining? " The two latter questions were objected
to as within the statute (Code, section 4608) and privileged,
and the objections were sustained. These rulings are as-
signed as error, and the argument of counsel for appellant in
respect thereto is confined to the single proposition that the
witness was in no sense the physician of plaintiff, or employed
as such; that he was the physician of the company, and called
to see plaintiff solely on its account and in its interests. It
may be conceded that the sole purpose of the agent in calling
the physician was that the latter might ascertain the condi-
tion of plaintiff, and thus be prepared to advise the company,
should occasion therefor arise, or be a witness on its behalf,
if necessary. Certainly, if the visit of the physician had
been confined to the limits incident to such purpose alone, his
eligibility as a witness on behalf of the company might not
be open to question. Without doubt, a railway company,

with the utmost propriety, may thus advise itself of the fact
of injury, and the character and extent thereof, in anticipa-
tion of a possible claim against it for damages.    And with
that end in view, it may send a physician to inspect and take
notes, or otherwise inform himself of existing conditions.
But this can avail the company nothing unless the physician
shall strictly retain his character as an employe of the com-
pany.    If, upon request or upon his own motion he assumes
to advise or administer treatment to the patient, and the lat-
ter in any manner acquiesces therein, the physician thereby
casts aside his relation as an employe of the company, and
transfers his allegiance to the patient.    In such instances a
case is presented where one cannot serve two masters at one
and the same time.    The allegiance of the physician must be
wholly upon one side or the other.    It matters not, in this
connection, who calls him in the first instance, or who pays
him.    He may present himself at the side of the patient on
his own motion, and he may not expect, or in fact receive, pay.
The reason for this is apparent upon a moment's reflection.
If the physician assumes to advise or treat, he should be put
in possession of all facts necessary or material to enable him
to do so properly.    If the patient acquiesce, he should have
the right to and should communicate freely and fully with-
out fear of exposure or of having his confidence made com-
mon property.    It was to this end that the statute was
enacted, and manifestly the purpose thereof may not be frus-
trated by proof that, at the time of rendering professional
service, the physician was under contract of employment to
serve the interest of the person or company subsequently
charged with responsibility for the identical injury he is
called upon or assumes to treat.    Accordingly we hold that
the trial court did not err in refusing to permit answers to the
questions asked of the witness.    The views above expressed
find support, in principle, at least, in the following cases:
*Raymond v. Railway,* 65 Iowa, 152; *Kiest v. Railway,* 110
Iowa, 32; *Griffith v. Railway* (Sup.) 66 N. Y. Supp. 1801;

*Railway v. Mushrush,* 37 N. E. Rep. 954; *Pennsylvania Co. v. Marion,* 123 Ind. 415 (23 N. Y. Rep. 973); *Grossman v. Knights of Honor* (Sup.) 6 N. Y. Supp. 821; *State v. Houseworth,* 91 Iowa, 740; *State v. Swafford,* 98 Iowa, 362.

IV.   Plaintiff, in company with a large number of other persons, had been attending a fair at Centerville.   While on the train going home, several of the party, including plaintiff, indulged more or less freely in intoxicants.   Plaintiff testifies that after he got on the train he drank several swallows, or about half a teacupful, of whisky.   It appears that he went back into the rear car of the train, and there stopped and engaged in conversation with a party of young men and women. In the course thereof, he was accused of some impropriety of speech and conduct, whereupon an angry altercation arose. Others of the party interfered, and, for the time being, prevented blows being struck.   At this juncture the brakeman, Fiehart, came in, and, upon being apprised of the situation, conducted plaintiff to the rear end of the car, and ordered him to sit there and keep quiet.   In the meantime two of the young men of the party had taken the young women into a forward car, and, returning, at once started for the rear end of the car, armed with beer bottles.   Plaintiff says that, as they came up, Fiehart, who was standing near, told them that " this man [plaintiff] is attending to his own business, and you leave him alone."   The demand of the brakeman was not heeded, however, and a general fight began, during which plaintiff knocked Loughman down, and then was struck himself by a beer bottle in the hands of some one of the assaulting party, and felled to the floor.   Plaintiff says that he was rendered insensible by one of the blows struck with the beer bottle, and that he did not recover consciousness until the next morning.   Thus far there is practically no conflict in the testimony.   Now, in respect of what was done by the brakeman to quell the disturbance, plaintiff says that when the attack was made upon him the brakeman did not attempt to prevent the assault.   The other witnesses unite in saying that he

made efforts· to get between the fighting men and to restore order, but was unable to do so. How plaintiff got out of the car door upon the platform is also the subject of much conflict in the evidence. It is said by witnesses for plaintiff that, after the fight had been in progress for some time, the brakeman seized hold of plaintiff with one hand, opened the car door with the other, and pushed him out on the platform, following him out and closing the door; that in a few moments the brakeman re-entered, and, as he came in, the crowd was still at the rear of the car, insisting upon going out to get plaintiff and bring on a renewal of the affray. Some of the witnesses say that the brakeman thereupon ordered them to keep quiet, and said, " He is off now; I throwed him off; " others say the expression used was, " I put him off; " while others insist that nothing more was said than, " He is off; now keep quiet." For defendant, the brakeman testifies that he did not go out of the car at all; that, upon its being said that some one of the party had drawn a knife, he pulled the door open, and assisted or allowed plaintiff to make his exit to the platform, whereupon he closed the door, and stood with his back to it, refusing to allow any one to go out. The brakeman is corroborated by several witnesses, and they agree that what he said was, " He is out; now keep quiet," and that this was said while he was standing with his back to the door. There can be no doubt of the fact that there was much confusion in the car at the time of the affray, and all were more or less excited. There is no evidence to the effect that, at the time of or during the affray, Fiehart said anything to plaintiff, and there is no direct evidence of any force used by him toward plaintiff, save that it is said by some of the witnesses that after plaintiff had been hit several times, and after some one had called out, " Look out, Sherm; he has got a knife! " he (Fiehart) got the door open and pushed plaintiff out upon the platform. It is not material to the point we have in mind to inquire how plaintiff reached the ground from the platform. Suffice it to say that there is the statement attributed to Fie-

hart as he is said to have re-entered the car. Two of the witnesses say they saw plaintiff fall off, while two others say they saw him go down the steps and jump off; and four other witnesses say that, after the accident, plaintiff told them that he had jumped off to escape the fury of his assailants.

In the fifth instruction, the court told the jury that "if you find that said brakeman helped, pushed, or even forced the plaintiff through the door of the car, and upon the plat-

**4. INSTRUCTIONS:** ejection of passenger from moving train. form, and did so for the purpose of protecting the plaintiff from the violence inside the car, and with no purpose to eject or force him from the train, then the plaintiff cannot recover." In the sixth instruction the jury was told that "the plaintiff is not not required to show that the said brakeman actually threw the plaintiff from said train. If the evidence shows that the said brakeman wrongfully and forcibly put said plaintiff out of said car, and upon the platform thereof, and that for that reason, and without the affirmative act or the negligence of the plaintiff, he fell from said platform, that would be an ejectment from the train. In order to show that the act complained of was wrongful, it is not necessary that it be shown that it was done with malice or ill will against the plaintiff. It would be sufficient to show that the act was wrongful, if it appear that the said brakeman was endeavoring to remove said plaintiff from said train under the circumstances claimed. To put any person off a train under such circumstances is a wrongful act." We think this instruction is misleading and open to criticism, for that the jury is given no adequate guide to enable it to correctly determine whether the act of the brakeman in pushing plaintiff out of the car upon the platform, if such was found to be the fact, was or was not wrongful. In the fifth instruction it will be observed that the jury was told that, if the ejection was to protect plaintiff from the violence in the car, there can be no recovery. This is equivalent to saying that an ejection under such circumstances would be rightful. In the later instruction the

jury was told that the ejection, to be actionable, must be shown to have been wrongful, and that it was wrongful if done under the circumstances claimed. What is meant by "the circumstances claimed" and by "such circumstances" is wholly left open to conjecture. The expressions may be supposed to have reference to the fact conditions presented in the evidence for plaintiff, and this we are warranted in saying inasmuch as the circumstances are not detailed in the petition. Plaintiff, as we have seen, does not pretend to have any personal knowledge upon the subject of his ejectment from the train. Looking into the testimony of the witnesses, we find the fact conditions presented to be such that each individual juror might readily arrive at conclusions differing in many material respects from those arrived at by his fellows. Now, we may readily concede that to forcibly put a passenger out on the platform of a moving car, from which, as a natural and proximate result, he falls, would amount to an ejection from the train. And if the act was wrongful, there can be no doubt but that it would give rise to a cause of action. The question, then, is, was it wrongful, and why? This question cannot be answered as matter of law, or by a vague reference to "the circumstances claimed." The brakeman was certainly in authority upon the train, and, it may well be presumed, was charged with the duty of preserving order, and of preventing one passenger from interfering with or molesting another. Indeed, this is admitted in argument. He was called upon to act in the premises, therefore; and it is not even suggested that in the first instance he interfered in the affray for any reason other than to restore order, and to prevent one passenger from doing injury to another. So far, at least, his conduct must be held to have been warranted, and therefore not wrongful. If thereafter he acted wrongfully, it must be because he carried his interference to an unreasonable and unnecessary extent, in view of the conditions found to exist, or because he ceased to confine his efforts to an attempt to suppress the disorder and prevent injury being done to plain-

tiff or to other passengers in the car, and by himself actively
and aggressively made an assault upon plaintiff, culminating
in an ejectment from the train as alleged.   By the instruc-
tion under consideration the jury was not advised in respect
of any of these matters, or the rules of law applicable thereto.
The charge being the serious one of wantonly putting plaintiff
off a swiftly moving train, we think the defendant may be
said to have been fairly entitled to have the jury told not only
what was the duty of the brakeman, but by what rule they
were to determine when, if at all, he ceased to act in the per-
formance of his duty, and himself became a wrongdoer.

We think, also, that the instruction is open to criticism
for that the jury may well have inferred therefrom that, if it
was found that plaintiff had been wrongfully pushed out upon
the platform by the brakeman, then defendant would be liable,
whatever the cause from which his subsequent fall from the
train immediately proceeded, provided the same was not the
result of his own affirmative act or negligence.   It is to be
borne in mind that a recovery is sought in this action because
plaintiff was wrongfully ejected from the train, and not sim-
ply because he was wrongfully pushed out upon the platform.
Accordingly, to support a recovery, the jury was required to
find not only that the pushing of plaintiff out upon the plat-
form was wrongful, but that, as a natural and proximate re-
sult thereof, he fell from the train and sustained the injury
of which he complains.   The manner of his leaving the plat-
form was therefore a matter of primary importance, and the
defendant could be made liable only upon its being shown
that the result was brought about by the positive act of the
brakeman.   This phase of the case should have been made
more clear, and especially in view of the fact that there was
much evidence tending to show that plaintiff voluntarily
jumped from the train after he was put out or went out upon
the platform.

We have examined the other assignments of error pre-
sented by appellant.   Some of them are without merit, and

others present questions which are not likely to arise upon a new trial.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.—*Reversed.*

DEEMER, C. J. (dissenting). The case is reversed because of an error in the instructions in failing to define the terms " circumstances claimed " and " such circumstances," used in the sixth instruction. I think they are defined in the instructions given, when applied to the pleadings and concessions of counsel made during the trial, and that when all of the instructions are taken together, as they should be, no such error as the majority have found really exists. To show that I am not mistaken in this, I here quote in full the fourth, fifth, and sixth instructions given by the court, which relate to the matter covered by the fourth division of the opinion. They read as follows, to wit:

(4)   It is claimed by plaintiff that he was ejected by one Fiehart, and it is admitted in evidence and argument that said Fiehart was a brakeman upon said defendant's train. Under such showing, it may be considered established that said Fiehart was an agent and employe of defendant. It is claimed by the plaintiff that while the said train was in passage between the stations of Seymour and Harvard, in Wayne county, Iowa, that said Fiehart forcibly ejected said plaintiff from said train, in the nighttime, and while said train was running at a high rate of speed. Upon this contention the defendant takes direct issue. It denies that said Fiehart forcibly ejected plaintiff from said train. Unless the plaintiff sustains his contention regarding this material and vital essential, he cannot recover. If you find from the evidence that the plaintiff got off said train voluntarily or under compulsion of others, or ran from said train through fear of the assaults of others, or if you find that plaintiff got off or was put off said train for any other reason or in any other way than that asserted by said plaintiff, as stated above, the plaintiff cannot recover.

(5)   If you find that the plaintiff while upon said train got into an altercation with others, which culminated in an affray, in which the plaintiff was assaulted and injured,

the defendant cannot be held liable therefor in the case at bar. If such affray and the assaults of others directly or indirectly caused the plaintiff to get off said train, the plaintiff cannot recover. If in such affray the plaintiff, in an endeavor to escape from said assaults, ran out of the car, upon the platform, and from such platform got off or fell from said train, the plaintiff cannot recover. If, under the circumstances shown in evidence, you find that, with the consent or even with the aid of the said brakeman, the plaintiff went out of said car, and thence upon said platform, and that, without the wrongful and forcible act of said brakeman, the plaintiff got off or fell from said platform, the plaintiff cannot recover. If you should find that said brakeman, in an endeavor to protect the plaintiff from the assaults of others, allowed, advised, or even assisted the plaintiff out of the door of the car, and upon its platform, the plaintiff cannot recover. If you find that said brakeman helped, pushed, or even forced the plaintiff through the door of the car, and upon the platform, and did so for the purpose of protecting the plaintiff from the violence inside of the car, and with no purpose to eject or force him from the train, then the plaintiff cannot recover. Before the plaintiff can recover, it must appear that the wrongful act of said brakeman was the cause of the injury complained of.

(6) But the plaintiff is not required to show that the said brakeman actually threw the plaintiff from said train. If the evidence shows that the said brakeman wrongfully and forcibly put said plaintiff out of said car, and upon the platform thereof, and that for that reason, and without the affirmative act or the negligence of the plaintiff, he fell from said platform, that would be an ejectment from the train. In order to show that the act complained of was wrongful, it is not necessary that it be shown that it was done with malice or ill will against the plaintiff. It would be sufficient to show that the act was wrongful, if it appear that the said brakeman was endeavoring to remove said plaintiff from said train under the circumstances claimed. To put any person off a train under such circumstances is a wrongful act; and if the evidence justify a finding by you that the said brakeman put, or assisted in putting, plaintiff off said train, and that he did so forcibly and willfully, and with malice, such act would also be wrongful. The defendant denies the allegation that

the said brakeman put plaintiff off said train, or that he in any way contributed to such result, and does not seek to excuse or justify said act. If you find said brakeman did put said plaintiff off as claimed, it may therefore be concluded it was without reason or justification.

Here we have the exact claims made by the plaintiff regarding his forcible ejection from the train stated in plain and concise language. The jury is specially instructed that unless it be shown that Fiehart forcibly ejected plaintiff from the train in the nighttime, and while it was running at a high rate of speed, plaintiff could not recover. It is also stated in express terms that, if plaintiff got off or was put off the train in any other way than as above stated, he could not recover. This thought is amplified in every conceivable way in the fifth instruction. In the sixth the court refers to the "circumstances claimed" and "such circumstances," and in the fourth the jury is told just what plaintiff's claim was, and as to what he must show in order to recover. This is the only statement anywhere in the instructions as to what these claims were. Manifestly the jury could not have found for the plaintiff, under these instructions, without finding that defendant's brakeman forcibly ejected plaintiff from the train in the nighttime, and while the train was running at a high rate of speed. These instructions were really more favorable to the defendant than it was entitled to. Every conceivable feature of the case was covered by the instructions which we have quoted. The sixth has reference to what would amount to a forcible ejection, and is clearly correct. The instructions, as a whole, show that the only issue in the case was whether or not the brakeman forcibly ejected plaintiff from the train. Defendant did not plead any excuse or justification for the act. Its answer was a general denial of the allegations of the petition, and, as stated in the instructions, the only question was whether plaintiff was forcibly ejected in the nighttime, and while the train was running at a high rate of speed. If plaintiff failed to establish this claim, the court

instructed, in so many words, that he could not recover. Had excuse or justification been pleaded or relied upon, a different question might have been presented, but, as we have seen, no such issue was tendered. Moreover, after plaintiff had introduced his evidence and rested, the parties, through their counsel, agreed in open court, and in the presence of the jury, that the only cause of action was based upon the alleged tort of the defendant and its agents in assaulting and forcibly ejecting plaintiff from the train, without cause, while it was in motion; and the plaintiff dismissed all other issues presented by him, and withdrew the same from the consideration of the jury. This was entered of record by the court. The court instructed the jury that this was the only issue, set forth the exact claim made by the plaintiff in its fourth instruction, and said that, if this was not established, then plaintiff could not recover. In view of this record, which I think the majority have overlooked, there was no room for any confusion in the use of the words " circumstances claimed," or " such circumstances," as found in the sixth instruction. Defendant simply denied that it ejected plaintiff from the train while it was in motion. So that, if we take either the charge of negligence as agreed upon by the parties and entered of record, or the statement made by the court in its fourth instruction, there can be no doubt as to what was meant by the words " circumstances claimed." The meaning of these words settled, there is no trouble with " such circumstances " or " as claimed." Taking the instructions as a whole, there is no doubt, I think, of their correctness, and as to what the court meant by the use of the words which the majority condemn as not sufficiently specific. In the fourth instruction the court told the jury just what was claimed, and in so doing he followed the agreement and concession made by counsel. The claims of parties are usually set forth in their pleadings, and these claims are generally distinct from the evidence offered to sustain them. Ordinarily, when the court refers to the claims of the parties, it has reference to the pleadings, unless

it indicates some other source.    But we need not rest upon this, for in this case the court specifically told the jury, in its fourth instruction, just what plaintiff was claiming.    In the sixth instruction the court did not say " under the circumstances of the case," or " under the circumstances disclosed by the evidence," as defendant contends, but guardedly said " under the circumstances claimed."    Having stated these circumstances in the fourth instruction in clear and unambiguous language, I do not see where there is any room for confusion or doubt as to what was intended.    I would affirm the judgment.

Mr. Justice WEAVER concurs with me in this dissent.