CITY OF CHEROKEE et al., Appellants, v. AETNA LIFE INSURANCE COMPANY of Hartford, Connecticut, Appellee.

No. 41658.

MARCH 14, 1933.

J. F. Loughlin and McCulla & McCulla, for appellants.

Gleysteen, Purdy & Harper and Herrick & Ary, for appellee.

MITCHELL, J.—The appellee, an insurance company, executed and delivered a policy of insurance to the city of Cherokee, Iowa, on or about the 1st day of May, 1926, insuring the employees of said city, who were members of the volunteer fire department of said city, against death resulting, directly and independently of all other causes, from bodily injuries effected, during the term of the policy, solely through external, violent, and accidental means, as in the policy provided. The policy was in full force and effect in the month of January, 1931.

Calvin O. Royer was a member of the fire department of Cherokee, Iowa, and in good standing on the 21st day of January, 1931. On that date, early in the morning, he responded to an alarm calling out the fire department. The fire was in a refrigerator car in the Illinois Central yards at the intersection of Beach and Fifth streets. The refrigerator car was heated by charcoal. It was a cold morning, the ground was frozen, and there was some snow on the ground. Shortly after Royer arrived at the fire, he walked away from the fire toward a couple of his fellow firemen who were standing on the top of a little incline. His face was covered with soot. The in-

cline did not fall over six or eight inches in a distance of seven feet. As he came toward his fellow firemen, he was smiling and saying something, although the record does not show what statement he made. When he was within a few feet of his fellow firemen, he threw up his hands, fell over backward, and his feet went up in the air. He fell right straight back, his head hitting the frozen ground. After he fell, he lay on his back on the ground. He made no statement of any kind, but was breathing. He was picked up, placed in an automobile, and rushed to the hospital. He died on the way to the hospital.

Hannah· Royer was appointed administratrix of the estate of Calvin O. Royer, and this action was brought both in the name of the city of Cherokee and in the name of the administratrix of the Calvin O. Royer estate, against the appellee upon the policy of insurance which the appellee had written.·

█ It was the contention of the appellee that Royer died of myocarditis, and that the insurance company was not liable under the policy because, under the terms of the policy which the appellee issued, it was liable only in case death resulted from bodily injuries, directly and independently of all other causes, solely through external, violent, and accidental means, as provided by the terms of said policy.

A jury was waived, and the cause was submitted to the court. At the close of all the testimony, the appellee moved the court for a directed verdict, which motion was sustained by the court.

The record shows that Calvin O. Royer at the time of his death was 56 years of age. He was a member of the Cherokee fire department, and early in the morning of January 21, 1931, he was called to a fire in the railroad yards at Cherokee, and, while in the performance of his duties as a fireman, he slipped and fell, striking his head on the frozen ground. He never regained consciousness thereafter, but ·died within ten minutes after the fall. There was a slight incline at the place where he fell, and snow was on the ground. He was feeling all right the day that he died. There were no bumps or bruises on his head, and there was no bleeding. No autopsy was performed. He was dead before any doctor had a chance to examine him. The testimony of the doctors showed that his death might have resulted from the fall. Shortly after he died, his body was examined by a doctor, who testified that he ascertained from his examination that Royer had an enlarged heart. There was also testimony that in

1924 he was examined by his family physician, Dr. Cleaves, on behalf of the United States government, for a pension. Royer being a Spanish-American War veteran, under certain conditions, was entitled to a pension, and the government designated Dr. Cleaves, who also happened to be the family physician of Royer, to examine him. Royer was examined at that time, and Dr. Cleaves, over objection properly made, testified that from the examination made he found that Royer was suffering from high blood pressure, and that the condition that he was in at that time had a tendency to bring on a disease of the heart, and that it is common for persons who have high blood pressure to die very suddenly and without warning. In answer to a hypothetical question covering the facts as set out in this case, another doctor testified that in his judgment the probable cause of Royer's death was myocarditis. Upon cross-examination, however, he stated that it was possible that the fall might have caused this man's death. The death certificate, which was produced in evidence, gave as the cause of death, myocarditis. The evidence of the appellants in this case was that of the eyewitnesses who saw the accident. Opposed to this testimony was the testimony of the experts, the doctors who testified in answer to a hypothetical question setting out the facts in this case.

The question was clearly one for the jury. The jury having been waived in this case, the court was in the same position that a jury would have been in. The appellants complain because at the end of all the testimony a motion to dismiss was made by the appellee and was sustained. This court, in a very recent case, passed upon this very question. In the case of Griffith v. Arnold & Rasmussen, 204 Iowa 1216, 216 N. W. 728, 729, this court said:

"This action was at law and a jury was waived therein by stipulation. The judge who sustained the motion of the defendant was the trier of fact. If we were to hold that plaintiff's evidence made a prima facie case, would it follow that he was necessarily entitled to a reversal? A prima facie case is not necessarily a conclusive one before the jury. A plaintiff may make a prima facie case in a technical sense which entitles him to go to the jury, and yet may lose his case before the jury for want of strength and substance in his evidence. And so in this case, even though the judge believed that the plaintiff had made a prima facie case in a technical sense, which would have entitled him to go to the jury, yet, if he had believed

also that the evidence was not convincing, and that the circumstances proved and the inferences which were sought therefrom were weak and inconclusive, and would not justify a judgment for plaintiff on the merits, then he was under clear duty to dismiss the petition. Where the judge who hears the motion to dismiss is to be the jury which shall try the case upon its merits, we observe no reason why he should overrule a motion to dismiss only to dismiss upon the merits of his own motion."

This court has repeatedly held that, where the cause is tried to the court without a jury, the findings of the trial court on questions of fact are as conclusive and binding upon the Supreme Court as the verdict of a jury, and such findings will not be reviewed or disturbed by the Supreme Court where there is any evidence to substantiate them. In the case at bar, the appellants saw fit to waive a jury, and submitted the case to the court. There was a dispute in the evidence, and we are therefore bound by the findings of the lower court.

The other error complained of by the appellants was that the lower court erred in admitting the testimony of the witness Dr. P. B. Cleaves. Dr. Cleaves was called as a witness by the appellee. He is a practicing physician at Cherokee, Iowa. Calvin O. Royer was a Spanish-American War veteran, and Dr. Cleaves was directed by the United States government to examine Royer to ascertain whether or not he was entitled to a pension. This examination took place in 1924. Dr. Cleaves testified in regard to the physical condition of Royer, which information he secured at the time that he made the examination of Royer in 1924 for the United States government. The appellant, the Royer estate, objected to the testimony on the theory that it was a privileged communication between a physician and patient, and that said testimony was not admissible under Code, section 11263.

Code, section 11263, is as follows:

"No practicing attorney, councelor, physician, surgeon, or the stenographer or confidential clerk of any such person, who obtains such information by reason of his employment, minister of the gospel or priest of any denomination shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to

the usual course of practice or discipline. Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."

The construction of the above-quoted statute and the question of whether or not evidence of a physician is admissible have been before this court on several occasions.

In the case of Woods v. Town of Lisbon, reported in 138 Iowa, page 402, 116 N. W. 143, 144, 16 L. R. A. (N. S.) 886, 128 Am. St. Rep. 208, this court said:

"Dr. Bender had been employed by the defendant to be present at the operation if possible, and he in fact went to the hospital when Dr. York did. Before reaching the hospital Dr. York told Dr. Bender what the operation was to be, but neither at that time nor at any other time was there any consultation between them as to the case or as to the nature of the operation about to be performed. The testimony showed absolutely that the relation of physician and patient did not exist, that Dr. Bender in no way participated in the work, and that he was merely an observer thereof.

"The trial court held him an incompetent witness under section 4608 [section 11263, Code 1931] of the Code. The ruling was erroneous and prejudicial to the defendant. The section provides that 'no practicing * * * physician, surgeon * * * who obtains such information by reason of his employment, * * * shall be allowed, in giving testimony, to disclose any confidential communication properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline.' The statute has been construed to include knowledge or information acquired by the physician by observation or examination. Finnegan v. Sioux City, 112 Iowa 232, 83 N. W. 907. And if the relationship of physician and patient had existed at the time in question, the ruling would have been correct. But, as we have heretofore said, there was no such relationship, and without it the testimony offered was clearly competent. There was no confidential relation, and hence no privilege existed. Battis v. Railway Co., 124 Iowa 623, 100 N. W. 543; State v. Swafford, 98 Iowa 362, 67 N. W. 284; State v. Smith, 99 Iowa 26, 68 N. W. 428, 61 Am. St. Rep. 219; Sutcliffe v. Traveling Men's Ass'n., 119 Iowa 220, 93 N. W. 90; 97 Am. St. Rep. 298; 1 Elliott on Evidence, section 634, and cases cited. In Sutcliffe v. Ass'n.,

supra, it was said that the mere presence of the physician did not render the communication confidential when not such in fact.

"The appellee urges that Dr. Bender was not in the operating room with the consent of the plaintiff or her husband, and that because thereof he can give no testimony as to what he observed. We know of no authority going to this extent; but, on the contrary, such a holding would be directly adverse to the rule of the cases and to the language and intent of the statute itself. In State v. Height, 117 Iowa 650, 91 N. W. 935, 59 L. R. A. 437, 94 Am. St. Rep. 323, we held that the testimony of a physician who had made an examination of a man against his will was competent because the confidential relation protected by the statute did not exist."

In the case of Blossi v. Railway Co., reported in 144 Iowa, page 697, at page 713, 123 N. W. 360, 366, 26 L. R. A. (N. S.) 255, this court said:

"But appellant contends that the trial court was in error in some of its rulings with reference to the testimony bearing upon the issue which we have just been considering. For example, it is said that, as Dr. Morse was plaintiff's physician, his testimony was incompetent. It is a mistake to assume that a physician cannot testify in any case to which his patient is a party. He is only forbidden to testify when he obtains information by reason of his employment by confidential communications intrusted to him in a professional character, and necessary and proper to enable him to discharge his duties."

The Iowa rule is more fully stated in the recent case of State v. Masters, 197 Iowa 1147, at page 1150, 198 N. W. 509, 510. This was a criminal case in which two doctors who were called to treat a wound suffered by the accused were allowed to testify to certain matters observed by them in the accused's surroundings. On the question that they were incompetent under the statute, this court said:

"And, finally, if it should be conceded that they did sustain a confidential relation with the defendant, neither of them testified to anything in the remotest degree in the nature of confidential communications or to anything learned in a professional capacity. The statute does not prohibit a physician from testifying in any and all cases in which his patient may be a party. He is only prohibited

from testifying to any confidential communication properly intrusted to him in his professional capacity and necessary and proper to enable him to perform his duty, and to facts which are learned by him in the discharge of his duties from his observation and examination of the patient, where they are of a confidential nature, and necessary and proper to enable him to discharge his professional duty."

Thus it appears from the recent decisions of this court that the question of whether or not a physician can testify depends upon whether or not a relationship of physician and patient exists. If the relationship of physician and patient exists, the physician, under the statute, cannot testify. If the relationship of physician and patient does not exist, then, under the holdings of this court, the testimony of the physician is admissible.

The question in this case is whether or not the relationship of physician and patient existed between Dr. Cleaves and Calvin O. Royer in 1924, when the physical examination of Royer was made by Dr. Cleaves. Regardless of who employs the physician, if he assumes to advise or administer treatment to the patient and the patient acquiesces therein, then the relationship of physician and patient arises. In the case at bar, it appears that Dr. Cleaves is one of the physicians appointed by the United States government for examining veterans seeking pensions. Royer was a veteran of the Spanish-American War, and was seeking a pension from the United States government, and Dr. Cleaves was directed by the government to examine Royer for the purpose of ascertaining whether or not Royer was entitled to a pension. The record shows no examination made for the purpose of treatment, nor for the purpose of prescribing for the deceased, but does disclose employment by the United States government to make an examination in its behalf. This examination was made for the purpose of determining whether the said Royer was entitled to a pension as a disabled veteran. If there was any conversation or any talk between Royer and Dr. Cleaves on the day the examination was made, or at any time thereafter, in regard to the examination or in regard to the physical condition of Royer, it is not set out in the record. There is no showing in the record that Dr. Cleaves at any time ever treated Royer. It does appear that Dr. Cleaves was the family physician of the Royer family for several years, but he was never consulted by, and never treated, Royer. Thus, since Dr. Cleaves did not attempt to treat or prescribe

for Royer, the relationship of physician and patient did not exist between Dr. Cleaves and Royer at the time the examination was made, and, since the relationship of physician and patient did not exist, the testimony which Dr. Cleaves gave was not a privileged communication under the statute, and, under the well-settled rules of this court, the testimony was admissible, and the court did not err in admitting the same.

The judgment and decree of the lower court must be and it is affirmed.—Affirmed.

KINDIG, C. J., and ANDERSON, STEVENS, and KINTZINGER, JJ., concur.