SMITH BROTHERS MANUFACTURING COMPANY, Appellee, v. ANNA CARMICHAEL, Appellant.

No. 42821.

DECEMBER 17, 1935.

REHEARING DENIED APRIL 8, 1936.

Bennett Cullison and G. O. Hurley, for appellant.

V. H. Byers, for appellee.

MITCHELL, J.—Smith Brothers Manufacturing Company is a corporation organized under the laws of the state of Missouri, having its principal place of business at St. Joseph, engaged, among other things, in the sale of merchandise.

There was being operated at Harlan, Iowa, a clothing store, under the trade-name of P. J. Carmichael & Co. This store was operated by Paul J. Carmichael and his wife, Lucille. It appears that some difficulty arose between these two parties, the exact nature of which is not set out in the record, and Lucille Carmichael secured a divorce from her husband and by arrangement turned over to him the store. On or about October 1, 1931, Paul Carmichael sold for a consideration of $5,000 the stock and fixtures to his aunt, Anna Carmichael, who was at that time a school teacher. The conveyance was made by bill of sale, but there was no assumption clause contained therein. Anna Carmichael placed a manager in charge of the store, and continued to work at her chosen profession.

This suit was commenced to recover for goods and merchandise, as set out in a statement of account, sold to Paul J. Carmichael while he was owner and operator of the store known as P. J. Carmichael & Co.; Smith Bros. alleging in their petition

that Anna Carmichael had agreed with them in writing to pay the account in consideration of the extension of time of payment, and the sale and delivery of additional merchandise to her. The answer which the defendant filed was simply a general denial. A jury was waived, and the case was submitted to the court, who returned a verdict in favor of the plaintiff in the amount of $342.18, plus costs.

Anna Carmichael, being dissatisfied with the judgment and decree of the lower court, has appealed to this court.

It was stipulated and agreed between the parties that the goods referred to in the itemized statement were sold by Smith Bros. and delivered to the store at Harlan, Iowa, operated under the name of P. J. Carmichael & Co., on the dates set out in said statement. There is, therefore, no dispute in regard to the amount of the claim or the merchandise furnished. It is conceded that Paul Carmichael (sometimes referred to as P. J. Carmichael) was the nephew of Anna Carmichael; that he and his former wife owned and operated the store for some time; that in October of 1931 Paul Carmichael sold the store to his aunt, Anna Carmichael, for the sum of $5,000; that a bill of sale was executed and delivered by the nephew to the aunt, but that said bill of sale did not contain an assumption clause. It is conceded that after Anna Carmichael had purchased the store she placed in charge thereof as her manager a man by the name of Frank Monaghen.

The sole question which is in dispute here is whether or not Anna Carmichael agreed in writing, for a consideration, to pay this debt of approximately $300 which had been contracted prior to the time that she purchased the store. To ascertain this we must turn to the record.

On January 1, 1932, the appellee company wrote to the appellant a letter in which they said that their representative, Mr. Amos Young, had forwarded to them an order given by Mr. Monaghen, dated December 31st, covering items of merchandise for the store at Harlan. There was also inclosed with the order a check in the amount of $75 to apply upon the old indebtedness contracted by Paul Carmichael while he owned and operated the store, and the letter contained the following statement:

"Mr. Young writes that according to your present plans it would be possible to forward $35 to $50 weekly until the balance of your overdue account is taken care of.

"We have no reason for doubting Mr. Monaghen's statement but as we are now somewhat involved in the account, before going further, would like to have a letter, confirming these intentions, from you.

"We regret very much that anything of this kind should occur, and wish to assure you that it is our desire to work with you in every possible way to handle the matter. To do so, however, it would be necessary to make some arrangements regarding the overdue balance still on our books. But if we may have your assurance that the account will be taken care of along the lines suggested in Mr. Young's letter, we would be glad to give it prompt consideration.

"The order forwarded by Mr.Young is being held until we hear from you."

On January 2, 1932, Anna Carmichael, in her own handwriting, answered the letter of Smith Bros. dated January 1st, in which she acknowledged receipt of their letter, complained a little about business, told them that she had instructed Mr. Monaghen to buy very little, but that it was necessary that he have the merchandise which had been ordered from them on account of the necessity to have certain sizes, and then said, "I thank you for your consideration, and I wish to say that I have always paid my debts, and altho I haven't contracted these, I am standing responsible for them. I shall be much concerned until they are out of the way."

After receiving this letter, Smith Bros. forwarded to the appellant, at Harlan, the merchandise which had been ordered and referred to in their letter of January 1st.

Thus we find that the appellee in this case, after receiving the order for additional merchandise, wrote a letter to the appellant, telling her that they would have to hold the merchandise until they had received from her confirmation of the arrangement that her manager had made with the representative of the appellee company in regard to the balance due on the P. J. Carmichael account. In response to that inquiry, Anna Carmichael wrote a letter, in which she said, "I am standing responsible for them." In other words, she promised in writing that she would pay this debt. But the appellant says there was no consideration for making the promise. There was the consideration of the extension of the time of payment, by Smith Broth-

ers, and the additional consideration of furnishing merchandise to her store. They did extend the time of payment, and they did furnish additional merchandise.

Thereafter, in accordance with the agreement which was entered into, there were checks forwarded by the manager of appellant's store to the appellee company, at various times. Some of these checks were returned because of insufficient funds, but some amount of money was paid. However, the agreement of paying the weekly amount of $35 to $50 was not kept, and on February 9, 1932, Smith Brothers wrote Anna Carmichael another letter, in which they said that under date of January 2d she had agreed to pay $35 to $50 per week, and that these payments had not been made as per the agreement; that they desired some more definite understanding, and, unless they received a remittance to apply on the account by February 18th, it would be necessary for them to place the account in the hands of their adjuster for collection. On February 12, 1932, Anna Carmichael answered and acknowledged receipt of this letter, complained that business was not good, said that they were going to put on a sale, and inclosed a check for $35, ending her letter by saying, "I do appreciate the fact that you have been most considerate and I assure you that you will lose nothing." Five days after receiving this letter Smith Brothers received a letter from a lawyer at Harlan, in which he said that Anna Carmichael had made an assignment and transfer of the stock of merchandise to a trustee for the purpose of disposing of the stock to pay her creditors, including the appellee company, asking that they consent to the assignment. Smith Brothers immediately wrote Anna Carmichael, refusing to consent, and called her attention to the various letters which she had written to them and in which she had agreed to see that the account was paid, asking that same be taken care of, or they would be forced to commence suit against her to collect same. Anna Carmichael replied to this letter on February 18th stating that the trustee would realize from the sale of the stock more than sufficient to pay the wholesale bills, including theirs.

This case was brought as a law action. A jury was waived and the case submitted to the court.

The finding of the trial court has the same force and effect as the finding of a jury. In the case of City of Cherokee v. Ætna

Life Insurance Co., 215 Iowa 1000, on page 1003, 247 N. W. 495, 497, this court, said:

"The jury having been waived in this case, the court was in the same position that a jury would have been in. * * *

"This court has repeatedly held that, where the cause is tried to the court without a jury, the findings of the trial court on questions of fact are as conclusive and binding upon the Supreme Court as the verdict of a jury, and such findings will not be reviewed or disturbed by the Supreme Court where there is any evidence to substantiate them."

So in the case at bar we find that Anna Carmichael received the letter of Smith Brothers of January 1st in which they said that the manager of her store had given an order for some merchandise, but that before they could ship the merchandise they must have some understanding with her in regard to the past-due account; that their salesman informed them that the account would be paid at the rate of $35 to $50 per week, and they desired to have this confirmed. The very day she received the letter, the day after they had written to her, Anna Carmichael wrote the appellee company telling them that she was responsible for the account; that the arrangement to pay the weekly amounts would be carried out; and that, while she did not want any great amount of merchandise purchased, it was necessary to fill in with odd sizes so that they would not lose business. Clearly, this was an agreement to pay this debt. There was consideration because there was an agreement to extend time, and, in addition to that, there was an agreement to furnish additional merchandise. Smith Brothers did furnish the additional merchandise. They did extend the time for payment.

Thus we find that there was evidence to substantiate the judgment of the lower court, who sat in the place of a jury, and therefore the judgment and decree of the lower court must be, and it is hereby, affirmed.

Chief Justice and all Justices concur.