Staples, J.
The prisoner was indicted for perjury in the hustings court of the city of Manchester, and was convicted and sentenced to confinement in the jail of the city for one year. After the verdict was rendered, he moved the court to grant him a new trial, upon the ground that the verdict of the jury was contrary to the law and the evidence. His motion was overruled, and the prisoner excepted. His bill of exceptions contains all the facts proved on the trial, from which it appears that the prisoner was examined as a witness upon the trial of Joseph Turner, before the mayor of Manchester, upon the charge of rape, and upon the examination the prisoner testified that he had no conversation or plot with the said Joseph Turner, before they left Manchester, to commit a rape upon Pallas Boyd; that he and Turner went to the locality of the alleged offence for the purpose of getting flowers, and that he heard no screams from the girl, Pallas Boyd, whilst Turner had her in the bushes; that the commonwealth’s attorney asked that his testimony be written down; that a pause in his examination of two or three minutes ensued, during which time the prisoner was retired from the witness stand; that the prisoner during this interruption stated to Mr. Fitzgerald, a police officer, to Mr. Bedford, a bystander, and to the commonwealth’s attorney, that he had sworn falsely in his testimony just given; that he had done so to screen Turner, and that when' he went back on the stand he would tell the truth; that the prisoner was then put on the stand again as a witness, no other witness intervening, and testified that he and Turner had had a bargain and conversation about the girl before they left Manchester, and that he did hear screams from the girl while Turner had her in the bushes; and thereupon the said mayor refused to hear him further. *1027 It was further proved that the prisoner was not warned by said mayor that he had a right to refuse to answer questions put to him; that he had no counsel; that he appeared somewhat confused, but not more so than is usual with witnesses; and that he is in the fifteenth year of his age. And these were all the facts proved on the trial.
The charge in the indictment is of perjury in the first statement before the mayor; and the evidence relied on to establish the perjury is the contradictory statement before the same officer at a subsequent period of the same examination. As will be seen from the bill of exception, this contradictory statement was the sole and only proof adduced by the commonwealth in support of the indictment.
The question we are to determine is, was he properly convicted upon that evidence ?
hfo rule is perhaps better settled than that to authorize a conviction of perjui’y there must be two witnesses testifying to the falsity of the statement, or one witness with strong corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the party and the legal presumption of his innocence. This rule is founded upon the idea that it is unsafe to convict in any case where the oath of one man merely is to be weighed against that of another. Lord Tenterden is reported to have said that corroborating circumstances are not sufficient, but that the conti’adiction must be given by two witnesses. But the rule is now settled otherwise; the confirmatory evidence however must be of a strong character, and not merely'corroborative in slight particulars.
It was at one time held that when the same person has by opposite oaths asserted and denied the same fact, he may be convicted on either; for whichsoever of *1028 them is given in evidence to disprove the other, the defendant cannot be heard to deny the truth of that inasmuch as it came from him. But this ^oc^ne has been long since exploded, and it is now held that the prosecuting attorney must elect which of' the two oaths he means to rely upon as false, and he-must prove the perjury in that particular’ statement. Two early English cases are sometimes cited as holding that the perjury may be established by proof of the contradictory oath merely, without other evidence. One of these is an anonymous case decided by Yates, J. at the Lancaster assizes in 1764, and the ruling approved by Lord Mansfield. The other is the case of Rex v. Knill, a short report of which is found in a note in Barnwell & Alderson R., page 929. It is shown, however-, in 2 Russell on Grimes, 652, that in each of these cases there were corroborating circumstances in addition to the contradictory oath. But if these cases even go to the extent which is claimed for them, they are overruled by the later English decisions. And it is now held by those courts that the defendant’s own ■evidence upon oath is not sufficient of itself to disprove the evidence on which the perjury is assigned.
In Regina v. Wheatland, 8 Car. & Payne R. 288, Mr. Baron Gurney held that it was not sufficient to prove that the défendant had on two different occasions given directly contradictory evidence, although he might have wilfully done so; but that the jury must be satisfied affirmatively, that what he swore at the trial was false, and that would not be sufficiently shown to be false by the mere fact that the defendant had sworn contrary at another time; it might be that his evidence at the trial was true, and his deposition before the magistrate false. There must be such confirmatory evidence of the defendant’s deposition before the mag *1029 istrate as proved that the evidence given by the defendant at the trial was false.
In JRegina v. Hughes, 1 Car. & Kerwan, 519, Tindall, C. J., said: If you merely prove the two contradictory statements on oath, and leave it there, non constat which statement is the true one. See also Mary Jackson’s case, 1 Lewin 270; 2 Russell on Crimes 651-652; Roscoe Crim. Evidence, 767-768.
In the United States there are but few decisions bearing upon the question. The writers on criminal law, however, lay down the ‘rule in conformity with the English cases. 3 Wharton, sec. 2275; 2 Bishop Cr. Law, sec. 1005; 1 Greenl. Ev. 259.
The only opposing case is that of the People v. Burden, 9 Barb. R. 469. There Johnson, J., delivering the opinion of the court, enters into an elaborate discussion of the whole subject, and arrives at the following conclusions: That where a defendant by a subsequent deposition expressly contradicts and falsifies a former one made by him, and in such subsequent deposition expressly admits and alleges that such former one was intentionally false at the time it was made, he may be properly arrested upon an indictment charging the first deposition to be false, without any other proof than that of the two depositions.” To maintain his position, the learned judge relies upon the two English cases already mentioned, not adverting, however, to the fact that there were corroborating circumstances in each of them. The distinction he seeks to establish is not recognized by any adjudicated case, or by any writer on criminal law. This proposition is, that the first oath of the prisoner must be held to be false because in the second he admitted it to be so. In other words, when the prisoner has made two contradictory statements under oath, and in the second he *1030 has acknowledged the intentional falsity of the first, that acknowledgment is sufficient to establish the per-of the first without further evidence. And it is as]je(j why may not the prisoner be convicted of perjury upon his mere confession, as in other cases.
It is not denied that a full judicial confession is perhaps sufficient to found a conviction upon in any case. It is substantially the same as a plea of guilty to the indictment. But it is denied that a mere admission, not judicial, of having sworn falsely, dispenses with all further proof of the fact. As before stated, when there are two conflicting statements under oath the prisoner cannot be convicted upon either, for the reason, say the judges, it is not possible to tell which is the true and which is the false. In such case, it is agreed on all hands, that strong confirmatory evidence is essential. It is gravely insisted that this confirmatory evidence is fully supplied by the prisoner’s acknowledgment of the falsity of the first statement. Why may not the acknowledgment itself be false.
If the second oath, deliberately taken, is insufficient to overcome the first, why should a mere admission have that effect ? When a witness deliberately asserts-a fact to be true as within his knowledge, and in a few minutes thereafter deliberately and intentionally asserts the very reverse as within his knowledge, all ground of innocent mistake being excluded, he thereby indirectly but unequivocally affirms the falsity of the first. Do we discredit the first any sooner, or believe the second the more readily, because the witness tells us that one was intentionally false and the other true? We believe neither of them. We place no confidence in either statement, from an absolute inability to determine which is true, or whether either is true. If the witness is afterwards put on his trial for perjury, our *1031 difficulties are in no wise removed. We are still in doubt which is the true and which is the false. It is very true that a witness making two palpably ing statements may sometimes by his demeanor satisfy the hearer that one is to be credited rather than the other. But when those statements are repeated to a third person, it is very difficult, if not impossible, to detect the false without some aid from surrounding circumstances. And no mere asseveration of the witness will assist the mind in arriving at a just and accurate conclusion. If the witness is to be convicted of perjury upon his bare declaration that the first statement is false, it is not because we believe his declaration is necessarily true, but upon some idea that it is in the nature of a confession, and therefore to be believed. A deliberate confession of guilt is generally credited, because it is presumed to flow from the highest sense of guilt? It must be remembered,however, that there are two statements upon oath, and if the prisoner is to be concluded from denying one to be true, the same reason would conclude him from denying the other, and the prosecutor might select either as the ground of his proceeding. In this very case the commonwealth might have elected to proceed upon the second statement made by the prisoner. In that event all will concede he must have produced other testimony in addition to the contradictory statement first made. Is it possible that the principle is so reversed and is of so little value that the prisoner may be convicted of perjury upon the first, merely because upon his second examination he admitted the first did not contain the truth.
If this be so, the rule laid down that in case of two conflicting statements there can be no conviction unless there is corroborative evidence is not of the *1032 slightest value. When we speak of corroborative evidence, we do not mean such as emanates from the of the prisoner himself, but evidence aliunde, evidence which tends to show the perjury independently of his own declarations. The whole law in reference to perjury is based upon the idea that when there is witness against witness, oath against oath, there must be other evidence to satisfy the mind.
The rule is thus laid down in 1 Greenleaf, sec. 265: If the evidence in proof of the crime of perjury consists of two opposing statements of the prisoner, and nothing more, he cannot be convicted. * * * * If both the contradictory statements were delivered under oath there is nothing to show which of them is false, where no evidence of the falsity is given.” See also Dodge v. State, 4 Zabriskie 455. This is a sound rule, and ought not to be departed from to meet particular cases. In this connection it may be mentioned that the decision in the blew York case was made by two judges in a court of three—Judge Selden dissenting.
The case now in hand is a strong illustration of the value of the rule in question. The prisoner was a youth of fifteen, charged before the same magistrate with being implicated in the crime of rape, and acquitted but a few minutes before. Upon his examination he was without counsel or advice, and was not cautioned that he was not bound to criminate himself. His examination had not been completed, but merely suspended; and during this interval he is said to have made to officeis of the government the statements upon which his conviction is founded. Before he had concluded he was stopped by the mayor, in the midst of his narrative, and forbade to say more. What he would have further said we cannot even conjecture; *1033 ¡So great is the abhorrence of the crime of rape, that the passions and suspicions of men are more easily-excited than by any other accusation. When, therefore, the prisoner confessed his complicity in the crime, ready credence was given to the statement. If in his first statement he had made the same confession, and in his subsequent examination denied it, it is easy to see that the perjury would have been charged in the last and not in the first. And yet without the aid of other evidence the one statement was entitled to no greater consideration than the other. Upon the whole, I think the prisoner was improperly convicted upon the facts •as presented to the jury.
With respect to the instructions, my opinion is, that no error was committed by the court either in refusing those asked for, or in giving those that were given. Upon the points presented by the second bill of exception, it is unnecessary to express any opinion, as the question will probably not again arise.
Judgment reversed.