[Filed December 10, 1889.]

## STATE OF OREGON, RESPONDENT, v. JOHN BUCK-LEY, APPELLANT.

CRIMINAL LAW—PERJURY—EVIDENCE.—Hill's Code, ? 778, requires two witnesses, or one witness and corroborating circumstances, to convict a prisoner of the crime of perjury; and what is meant by "corroborating circumstances" is evidence *aliunde* which tends to prove the prisoner's guilt independent of his declarations.

CRIMINAL LAW—PERJURY—INSUFFICIENT EVIDENCE.—A conviction for the crime of perjury cannot be sustained where there was no other evidence except proof of the taking of the oath, the giving of the evidence upon which the perjury is assigned, followed by proof that at other times the prisoner, when not under oath, made statements, the legal effect of which was to contradict his declarations under oath.

CONTRADICTORY STATEMENTS—SWORN AND UNSWORN.—In a prosecution for perjury, where the only evidence is the contradictory statements of the prisoner, one under oath and the other not, because of the solemnity of the oath, credit is to be given to the statements under oath rather than to those not under oath.

APPEAL from the circuit court for Multnomah county.

The defendant was indicted and convicted of the crime of perjury, and sentenced to the penitentiary for five years, from which judgment he has appealed to this court. It appears from the record that in a certain proceeding had before A. H. Tanner, police judge of the city of Portland, and acting magistrate, one Brown was examined upon a charge of being armed with a dangerous weapon, and of assaulting the appellant with such weapon, and upon such examination the appellant was sworn as a witness on the part of the State, and testified that he did not remember the circumstances under which he was injured, or who cut him, or how he received the wound in his abdomen. The

indictment contains proper assignments of perjury on each
of these specifications.   At the conclusion of the evidence
the defendant's counsel moved  the court to direct an
acquittal, for the reason the evidence on the part of the
State was insufficient to convict the defendant of the crime
of perjury, and that the jury must render a verdict of not
guilty.   But the court refused to so instruct the jury, to
which an exception was taken; and this ruling presents
the only question on this appeal.   All of the evidence
given upon the trial is contained in the bill of exceptions,
and may be briefly summarized:  A. H. Tanner testified he
was police judge of the city of Portland, and, at the time
laid in the indictment, acted as magistrate in the case of
*State* v. *Brown*, and that on such examination Buckley
was sworn as a witness and testified he was drunk at the
time laid in the information, and did not remember any of
the facts or circumstances relating thereto, or, in fact,
anything about it.   Nathan D. Simon, the assistant district
attorney, testified that he appeared before such magistrate
and conducted the examination against Brown in behalf of
the State, upon which Buckley was examined as a witness,
and that he asked, and the defendant Buckley answered
questions as follows:  "Question. · Do you know William
Brown?   Answer.   Yes.   Q.   Did you see William Brown
on the night of March 17, in the city of Portland, Oregon?
A.   Yes.   Q.   Have you received a cut or wound in the
abdomen?   A.   Yes.   Q.   Will you state the circumstances
under which you received such injuries?   A.   I do not
remember.   Q.   Who cut you?   A.   I do not remember.
Q.   How did you receive that wound in the abdomen?   A.
I do not remember.   Q.   Did you not tell Captain Brannan
that Brown had cut you with a knife, and that was the way
you got the wound?   A.   I do not remember.   Q.   Did you
not tell Captain Gritzmacher, the next morning after the
affray, at the police station, that Brown had cut you?   A.
I do not remember.   Q.   Did you tell Mr. Coldwell, of the
*Oregonian*, of the facts charging Brown with the same?   A.
I do not remember.   Q.   Did you not tell Chief Parrish,

at about 10 or 11 o'clock of the following day after the affray, at the city jail, that Brown had cut you, and did you not state the circumstances of the affair? A. I do not remember. Q. Did you tell Officer Morgan, on the afternoon of March 18 or 19, the day or two after the cutting, that you did not want to see Brown sent to the penitentiary, but, if you were going to die, you would tell the entire truth about the matter? A. I do not remember. Q. Why don't you remember? A. I was drunk. Q. Were you drunk all these two or three days after? A. No." Mr. Coldwell, the reporter of the *Oregonian,* testified to an interview he had with Buckley while the doctor was dressing his wounds, in which he said, substantially, that it was "Billy" Brown who gave it to him in the bowels. Chief of Police Parrish testified, in substance, that he had a conversation with the defendant, Buckley, the next day after he was cut, at about the hour of 11 o'clock A. M. That Buckley was at the city jail, and perfectly sober, but was suffering from a wound in the abdomen. That witness asked defendant how it happened, and he said he was walking with one Mrs. Snyder, and they met Brown, and Brown slapped her, and he said, "Don't do that;" then they had some words, and Brown pulled out a knife and stabbed him, and he lay some time on the sidewalk, till Officer Brannan came along and took him to the station. A. B. Brannan testified that he was a police officer; that he came along the street the night of March 17 last and saw the defendant sitting on the sidewalk, and asked him the circumstances under which he came there, and he repeated about the same story to Brannan that he did to Chief Parrish, already set out. Officer Morgan testified that on the nineteenth of March he took the defendant to the hospital, and that on the way he told witness that he did not want any harm to happen to Brown, but that if he died he would tell the truth about it. This was all the evidence that could have any relevancy to the question presented.

*Alfred E. Sears, Jr.*, for Appellant.

*Henry E. McGinn, District Attorney*, for the State.

STRAHAN, J.—It will be seen from the foregoing statement that the defendant was convicted of the crime of perjury on proof of his own contradictory statements in reference to the same transaction, made on several occasions when he was not under oath, and finally when he was examined as a witness in the police court. When he was not under oath he made statements to the police officers of the city of Portland tending to show that one Brown had made a felonious assault upon him with a knife; but, when the charge against Brown was examined in the police court, and the defendant was sworn and examined as a witness, he said he could not remember who cut him in the abdomen, nor could he remember the facts or circumstances attending the same; and it is upon these statements, under oath, that he did not remember, that the perjury is assigned.

Numerous common law authorities hold that upon an indictment for perjury there must be two witnesses. One alone is not sufficient, because there is in that case only one oath against another. *U. S.* v. *Wood*, 14 Pet. 430, where many authorities are collated. But it is said (1 Greenl. Ev. § 257:) "But this strictness has long since been relaxed; the true principle of the rule being merely this: that the evidence must be something more than sufficient to counterbalance the oath of the prisoner and the legal presumption of his innocence." But our own statute (Hill's Code, § 778) has prescribed the *quantum* of evidence necessary to a conviction in this class of cases as follows: "Usage, perjury and treason shall be proved by the testimony of more than one witness; usage, by the testimony of at least two witnesses; treason, by the testimony of two witnesses to the same overt act; and perjury, by the testimony of two witnesses, or one witness and corroborating circumstances." But it must be observed that the real contention in this case is whether or not the conviction can

be sustained on proof of the taking of the oath, the making of the statements upon which the perjury is assigned, followed by proof that at other times the defendant, when not under oath, made statements, the legal effect of which was to contradict his sworn statements, and on that subject the authorities all seem to be one way. 1 Greenl. Ev. § 259, says: "If the evidence adduced in proof of the crime of perjury consists of two opposing statements of the prisoner, and nothing more, he cannot be convicted; for, if one only was delivered under oath, it must be presumed, from the solemnity of the sanction, that that declaration was the truth and the other an error or a falsehood, though the latter, being inconsistent with what he has sworn, may form important evidence, with other circumstances, against him." And it is said, when a defendant has made two distinct statements under oath, one directly the reverse of the other, it is not enough to produce the one in evidence to prove the other to be false. 2 Whart. Crim. Law, § 2275. *Schwartz* v. *Commonwealth*, 27 Grat. 1025, is a very ably reasoned case, fully sustaining the same doctrine.

No doubt the prisoner committed perjury by swearing to an untrue statement as a witness, or he told a falsehood when he narrated his experience to the police officers; but in such case, because of the solemnity of an oath, credit is to be given to the statement made under oath, rather than to the one not under oath.

If it had been proven upon the trial that Brown did in fact stab the defendant in the abdomen, then it might have been claimed that the case was brought within the principle of *U. S.* v. *Brown*, 21 Pac. Rep. 461. There the main fact out of which the alleged false statement grew was abundantly established by the evidence, so that the court had before the jury the defendant's contradictory statements, as well as clear proof that the fact about which the false statement under oath was made did exist. *People* v. *Burden*, 9 Barb. 469, was relied upon by the State. In that case, which was decided by a divided court (Selden, J., dissenting), much stress was laid on the fact that the contradic-

tory statements were both in writing, a distinction which is not obvious to us; but, if sound, the case itself is one at variance with the English rule, and is unsupported by the adjudged cases, as well as text-writers in this country. To convict of the crime of perjury, the statute, which we cannot disregard, prescribes the amount of evidence requisite. There must be at least one witness and corroborating circumstances; that is, one witness testifying to the main fact in issue, and then another witness, or corroborating circumstances, tending to prove the main fact. What is meant by corroborating evidence in this connection is evidence *aliunde*,—evidence which tends to show the perjury independent of the prisoner's declarations. *Schwartz* v. *Commonwealth, supra; Gabrielsky* v. *State*, 13 Tex. App. 428.

This view of the law requires a reversal of the judgment of the court below, and that the cause be remanded for a new trial.