## Commonwealth v. Bradley

*Carl B. Shelley*, assistant district attorney, for Commonwealth.
*Sidney Handler*, for defendant.

Fox, J., December 14, 1932.—We have before us a motion for a new trial based upon the following reasons:

"1. The verdict is against the law.

"2. The verdict is against the evidence.

"3. The verdict is against the weight of the evidence.

"4. The Commonwealth failed to prove the falsity of the matter on which the perjury was assigned by the testimony of a credible witness and corroborative evidence aliunde which tended to show the perjury independent of any declaration or admission of the defendant and the person to be corroborated.

"5. The Commonwealth failed to prove any facts tending to show the falsity of the matter on which the perjury was assigned in corroboration of the testimony of a credible witness."

In the trial of the case, it was admitted by the defendant that on April 13, 1932, he made an affidavit before Alderman Charters, of the City of Harrisburg, viz., that he had purchased intoxicating liquor from one Russel Alexander in the City of Harrisburg, and that, on April 19th, at the hearing before the said alderman of the charge of selling intoxicating liquor against the said Alexander, he testified he purchased such liquor from the said Alexander. The Commonwealth produced evidence that the defendant, on May 26, 1932, made a statement to Solomon Hurwitz, Esq., in the jail of Dauphin County, the defendant being then in jail on a charge other than the one in the instant case; the latter at that time had not been made. The statement was at once reduced to writing, signed and sworn to by the said defendant before a notary public, the substance of which writing was that the said affidavit made before the alderman in the information and the testimony given by this defendant at the hearing of the said Alexander were not true but were false. The written statement was admitted in evidence. Riley Shope, the notary public, was also called and testified that he, as notary public, took the affidavit as shown on the said statement. Russel Alexander, the only direct witness for the Commonwealth, testified that he has known Bradley for some time, but had not spoken to him for two years, and that he did not sell any intoxicating liquor to him on April 13, 1932, nor at any other time. On account of being confined to the hospital, the alderman did not appear.

In his defense, Bradley testified that on the evening of April 13, 1932, he went to the residence of the said Alexander, who opened the door and sold him intoxi-

cating liquor, and that what he swore to in the information and at the hearing, to wit, that said Alexander had sold intoxicating liquor to him, is the truth and that which he told Mr. Hurwitz and reduced to writing, to wit, Commonwealth's exhibit No. 1, is not true.

The Commonwealth contends that the evidence of Russel Alexander, viz., that he never sold any intoxicating liquor to the defendant Bradley, is evidence of the perjury with which the defendant is charged, and the corroborating evidence of the said Hurwitz and Shope and the written statement, Commonwealth's exhibit No. 1, signed and sworn to by the defendant, are sufficient to sustain the conviction. We have the direct evidence of one witness, Alexander, of the alleged perjury and one contradictory statement relating to the same by the defendant. We regard what was said to Hurwitz, the writing and the affidavit before Shope as one, all having been contained in Commonwealth's exhibit No. 1, which is the testimony: 2 Wigmore on Evidence, Sec. 1331; Lessee of McCally v. Franklin, 2 Yeates 340.

The question before us is, is the evidence sufficient to sustain a conviction of the defendant of the charge of perjury?

We find no case in our state, nor has our attention been called to any, directly deciding the precise question before us.

Perjury is a crime of such a serious nature and bearing such serious consequences that at common law a conviction could not be had on the evidence of one witness alone, and for centuries the law required two witnesses to prove it; later the rule was relaxed so that a conviction might be sustained on the testimony of one witness and the proof by other witnesses of any material circumstance in confirmation of the witness who gives the direct testimony of the perjury. Such is the rule in Pennsylvania. The general rule in our country and England now is that "there must be either two witnesses to prove such falsity or one witness with material and independently established corroborative facts:" 2 Wharton on Criminal Law (12th ed.), page 1838, Sec. 1585.

In the case of Williams v. Com., 91 Pa. 493, 501, the Supreme Court said:

"It is a general rule that the testimony of a single witness to the falsity of the matter on which the perjury is assigned is insufficient to convict on a charge of perjury. Two witnesses are not essentially requisite, for if any material circumstance be proved by other witnesses in confirmation of the witness who gives the direct testimony of perjury, it may turn the scale and warrant a conviction."

The same rule is reaffirmed in the cases of Com. v. Rogo, 71 Pa. Superior Ct. 109, 115; Com. v. De Cost, 35 Pa. Superior Ct. 88; Com. v. Bobanic, 62 Pa. Superior Ct. 40.

Where the corroborating evidence consists of a statement by the defendant contradictory of his oath, two different views seem to be taken as to its sufficiency.

In 1 Greenleaf on Evidence, Sec. 259, it is said:

"If the evidence adduced in proof of the crime of perjury consists of two opposing statements of the prisoner, and nothing more, he cannot be convicted. For if one only was delivered under oath, it must be presumed, from the solemnity of the sanction, that that declaration was the truth, and the other an error or a falsehood; though the latter, being inconsistent with what he has sworn, may form important evidence, with other circumstances, against him. And if both the contradictory statements were delivered under oath, there is still nothing to show which of them is false, where no other evidence of the falsity is given."

In Schwartz *v*. Com., 68 Va. 1025, 21 Am. Rep. 365, the court in a well-considered opinion, at pages 1030-1032, said:

"If the second oath, deliberately taken, is insufficient to overcome the first, why should a mere admission have that effect? When a witness deliberately asserts a fact to be true as within his knowledge, and in a few minutes thereafter deliberately and intentionally asserts the very reverse as within his knowledge, all ground of innocent mistake being excluded, he thereby indirectly but unequivocally affirms the falsity of the first. Do we discredit the first any sooner, or believe the second the more readily, because the witness tells us that one was intentionally false and the other true? We believe neither of them. We place no confidence in either statement, from an absolute inability to determine which is true, or whether either is true. If the witness is afterwards put on his trial for perjury, our difficulties are in nowise removed. We are still in doubt which is the true and which is the false. . . .

"When we speak of corroborative evidence, we do not mean such as emanates from the mouth of the prisoner himself, but evidence aliunde, evidence which tends to show the perjury independently of his own declarations. The whole law in reference to perjury is based upon the idea that when there is witness against witness, oath against oath, there must be other evidence to satisfy the mind."

The same doctrine is held in Reg. *v*. Boulter, 3 Car. & K. 236, and in State *v*. Buckley, 18 Ore. 228, 22 Pac. 838.

In the case of State *v*. Hunter, 181 Mo. 316, 80 S. W. 955, in quite a full discussion upon the subject, the court, at pages 335-337, said:

" 'The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness' [State *v*. Heed, 57 Mo. 252; State *v*. Hill, 91 Mo. 423; State *v*. Blize, 111 Mo. 464]."

"The equilibrium [speaking of the result after admission of direct testimony of the prosecution's one witness, and denial by the accused] must be destroyed by material and independent circumstances, before the party can be convicted. . . .

"What is meant by corroborative evidence is said to be *aliunde* evidence which tends to show the perjury independent of the prisoner's declarations or admissions [State *v*. Buckley, 18 Ore. 228; Gabrielsky *v*. State, 13 Tex. App. 428; 2 Wharton's Criminal Law (10th ed.), Sec. 1319]." See, also, Schwartz *v*. Com., 68 Va. 1025, 21 Am. Rep. 365.

In Peterson *v*. State, 74 Ala. 34, the court, inter alia, said:

"There can be no conviction of the crime of perjury on the unaided testimony of a single witness. This would be oath against oath. There must be two witnesses, or one with strong corroboration. . . . This corroboration, to be sufficient, must be of the very act—the *corpus delicti*—the giving of material testimony which is wilfully and corruptly false. And when, as in this case, it is alleged the accused has made two sworn statements which are in irreconcilable conflict, if there is no strong corroboration of one of the versions, how can it be affirmed the other is false? Previously contradictory statements, made with or without oath, may be very important evidence, in connection with other circumstances, against the accused; but, no matter by how many witnesses the different and conflicting statements may be proved, this is not corroborative proof of the *corpus delicti*."

In the case of State *v*. Buckley, 18 Ore. 228, 233, 22 Pac. 838, the court said:

"There must be at least one witness and corroborating circumstances; that is, one witness testifying to the main fact in issue, and then another witness, or corroborating circumstances, tending to prove the main fact. What is meant by corroborating evidence in this connection is evidence *aliunde*—evidence which tends to show the perjury independent of the prisoner's declarations."

In Gildersleeve v. Atkinson, 6 N. M. 250, 260, the court, in speaking of corroborative evidence, said:

"Such evidence as tends, in some degree, of its own strength and independently, to support some essential allegation or issue raised by the pleadings testified to by the witness whose evidence is sought to be corroborated, which allegation or issue, if unsupported, would be fatal to the case; and such corroborating evidence must of itself, without the aid of any other evidence, exhibit its corroborative character by pointing with reasonable certainty to the allegation or issue which it supports."

In the case of State v. Guild, 10 N. J. L. 163, 187, it is said: "To corroborate is to strengthen, to confirm by additional security, to add strength."

The contrary view is contained in the following:

"The rule is well established, without a decision to the contrary, that proof that one accused of perjury made statements which conflict with the statement upon which the perjury is founded, is sufficient corroboration of a single witness so as to warrant a conviction. And this seems to be true, whether the contradictory statements proved were under oath or not or whether they were spoken or were contained in a writing:" R. C. L. Perm. Supp. 5035, Sec. 17.

The following cases are cited as authority for the foregoing rule: 1 Wharton's Criminal Evidence (10th ed.), page 791; Dodge v. State, 24 N. J. L. 455; Powell v. State, 5 Ala. App. 150, 59 So. 328; Brooks v. State, 91 Ark. 505, 121 S. W. 740; Davis v. State, 7 Ga. App. 680, 67 S. E. 839; Hereford v. People, 197 Ill. 222, 64 N. E. 312; State v. Swafford, 98 Iowa 362, 67 N. W. 284; Com. v. Parker, 2 Cush (Mass.) 212; Hemphill v. State, 71 Miss. 877, 16 So. 261; State v. Blize, 111 Mo. 464, 20 S. W. 210; State v. Molier, 12 N. C. 263; Rex. v. Mayhew, 6 Car. & P. 315.

We have examined each of the cases cited and we are of the opinion that some sustain the rule and that others do not.

In Wharton's Criminal Evidence, supra, it is said: "The testimony of a witness to falsity is sufficiently sustained by a written admission of the defendant."

In the case of Dodge v. State, supra, it is said that proof that the defendant has made statements verbally or in writing, whether under oath or not, conflicting with the statement under oath upon which the indictment is founded is corroborating evidence on the indictment for perjury, and such evidence in connection with the evidence of other witnesses is sufficient to warrant a conviction. It will be noted that the language used is in the plural, viz., statements. In Powell v. State, supra, it was likewise held that incriminating statements made by the defendant in connection with the positive testimony of the direct witness were entirely sufficient to sustain a conviction. Again the use of the word is in the plural, statements. In Davis v. State, supra, it was held that the testimony of the direct witness corroborated by the confession of the defendant would have been sufficient to authorize the jury to convict. There was, however, in the case evidence by several other corroborating witnesses. In Brooks v. State, supra, it was held that the direct evidence was fully corroborated by the evidence of two corroborating witnesses as to the falsity of the testimony of the defendant. In Com. v. Parker, supra, it was held that direct testimony as to the perjury is corroborated by writings of the defendant showing the falsity

of his testimony. In the case of Hemphill *v.* State, supra, it was held that where a defendant swore to a fact before the grand jury, and contradicted that statement under oath on the trial of him who was indicted as the result of his testimony before the grand jury, and the one so indicted testified that the statement before the grand jury was false, a conviction was sustained. In the case of State *v.* Blize, supra, it was held that a statement of the accused under oath directly contradicting the evidence which he was accused of falsely giving was evidence very strongly corroborative of a witness who testified to its falsity and was ample to sustain a conviction. In the case of State *v.* Swafford, supra, it was held that the direct evidence of false testimony given by the defendant was sufficiently corroborated by admissions made by him that the evidence was false, to several different people, there being other corroborating evidence. In the case of State *v.* Molier, supra, it was held that the falsity of the oath made by the defendant and directly proved by one witness was corroborated by four other witnesses. In Rex. *v.* Mayhew, supra, it was held that perjury is sufficiently proved by the direct evidence of one witness as to the falsity of the defendant's sworn statement, corroborated by an account or letter written by the defendant contradicting the statement made under oath.

We are of the opinion that not all of these cases sustain the rule as above laid down. There is little or no discussion in any of them upon the subject. They are naked declarations of the sufficiency of the corroborating evidence. We are inclined to give greater weight to the former view.

In the instant case, the defendant, when seen by an attorney in jail, made the declaration that what he previously swore to before the alderman was false; he saw and heard the statement reduced to writing; at the trial he testified that his testimony given before the alderman was the truth and his statement made in the jail was false. It is impossible from his testimony alone to determine which is the truth. To determine that we must resort to other evidence and that would be the evidence of the main witness. This would be reversing the requirement. Instead of the corroborating testimony strengthening the direct testimony, the latter would be strengthening the former. The mind is left in doubt as to which is the lie. How, then, is the direct testimony strengthened? Does it rise to the degree of corroboration required to sustain this heinous offense? The corroboration cannot be taken lightly; it must be reasonably certain and essential. We are of the opinion that it does not strengthen the testimony of the main witness and does not rise to the required degree of corroboration.

We do not regard it as proof of such a material circumstance in confirmation of the witness who gave the direct testimony of perjury as required by our own courts, as laid down in the cases of Williams *v.* Com. and Com. *v.* Rogo, supra.

Wherefore we are of the opinion that the corroborating testimony submitted by the Commonwealth did not rise to the standard required by the law and that the conviction should not be permitted to stand and that a new trial should be granted.

And now, December 14, 1932, upon due consideration, the verdict of the jury is set aside and a new trial is granted.

HARGEST, P. J., dissenting.—Believing that the opinion of the majority of the court establishes a very dangerous precedent in criminal jurisprudence, I am compelled to dissent and give my reasons therefor. The defendant was convicted on a charge of perjury. The trial judge's notes and the opinion of the majority show the following:

The defendant made an affidavit before an alderman that he had purchased intoxicating liquor from one Russel Alexander and swore to that fact at the

hearing. Sometime thereafter Solomon Hurwitz, Alexander's attorney, saw the defendant, then in jail on another charge, and asked the defendant to tell the truth as to whether he actually bought liquor from Alexander. The defendant said the truth was that he did not, whereupon Hurwitz asked whether he would sign and swear to a statement to that effect. The defendant said he would. The statement was then reduced to writing, and sworn to before a notary public, to the effect that the evidence which he had given before the alderman was not true. Subsequently the defendant was charged with perjury in having made a false statement before the alderman. On his trial the statement was admitted in evidence; the notary testified that Bradley swore to it; Hurwitz testified as to the circumstances; Alexander testified that he had not sold liquor to Bradley, and the defendant testified that the evidence which he had given the alderman was true and the statement given to Mr. Hurwitz was false.

The case resulted in a conviction, and upon motion for a new trial the majority of the court holds that the evidence is not sufficient to convict.

It is settled that, in Pennsylvania, the testimony of a single witness to the falsity of the matter on which the perjury is assigned is insufficient to convict, but two witnesses are not necessary, "for if any material circumstance be proved by other witnesses in confirmation of the witness who gives the direct testimony of perjury, it may turn the scale and warrant a conviction:" Williams v. Com., 91 Pa. 493, 501. But the majority opinion holds that in the present case the evidence of Alexander is that which must be corroborated and that it is only corroborated by the affidavit of the defendant, which is insufficient.

I am strongly of opinion that there are two fundamental errors in that position: first, that it is not the testimony of Alexander which is to be corroborated, but the affidavit of the defendant himself; and, secondly, that the testimony of Hurwitz as to the circumstances cannot be bundled up with the affidavit and completely disregarded.

On the first proposition, it seems to me that the majority of the court have overlooked that the real issue is a charge of perjury. The issue is false swearing, but the majority opinion seems to make the real issue the selling of liquor. If there had been no false swearing there could be no perjury, even though liquor was sold. It is the swearing and not the selling which is the first material point in issue. The swearing would have to be proved. The fact that it is admitted does not change the circumstance that it is the material point. Therefore, the affidavit, conceding that the defendant did swear and that the swearing was false, is the material piece of testimony to be corroborated.

Secondly, the majority opinion says:

"We regard what was said to Hurwitz, the writing and the affidavit before Shope as one, all having been contained in Commonwealth's exhibit No. 1, which is the testimony: 2 Wigmore on Evidence, Sec. 1331; Lessee of McCally v. Franklin, 2 Yeates 340."

These citations do not support the text. The McCally case was decided in 1798 and has not been since referred to in a single appellate Pennsylvania case. We were then in the formative period of establishing evidential values long since liberalized. That case is a civil and not a criminal case. There is not a suggestion in it that the circumstances surrounding the making of a paper cannot be offered in evidence. All that it decides is that where the defendant knew that a deposition was lost during the lifetime of the witness and defendant lived within one mile of the witness, who lingered in his last illness more than three months, and the defendant made no effort to replace the deposition, the court would not admit the parol evidence of the contents of the lost deposition because of the danger of the precedent. Proving contents of a lost paper is one thing;

proving the circumstances surrounding the making of the paper is quite another. Nor is the citation of Wigmore on Evidence authority for the proposition stated. It is there stated that the deposition, the writing, is the testimony taken down by the officer and not the officer's report of the witness's oral deposition. There is no question here of the writing and there is no officer's report concerning it except the evidence that an affidavit was made before a notary public. I am, therefore, clear that it is error to say that Hurwitz's testimony as to the circumstances of making the affidavit is incompetent evidence to corroborate the statements made in the affidavit.

In Com. v. Rogo, 71 Pa. Superior Ct. 109, 114, it is said: "It is never irrelevant to give in evidence any circumstance which tends to make the proposition at issue more or less probable;" and in Com. v. Bobanic, 62 Pa. Superior Ct. 40, 43, it is said: "The testimony would have greater or less weight according to its reasonableness and the circumstances surrounding the transaction," and, on page 44, it "may relate to another fact bearing on the issue." Suppose the defendant had sent for a minister and stated that he desired to confess his sins; that one of the sins upon his conscience was this false swearing; that he then signed a writing, dictated by the minister, in order to right the wrong he had done. Could it be, for a moment, suggested that such a circumstance could not be admitted to corroborate the statements made in the writing? To pursue the matter further, instead of sending for the minister or priest, suppose he sent for Hurwitz and told him the same thing. While the circumstance might have been somewhat less corroborative, could it be excluded? And so, instead of sending for Hurwitz, Hurwitz asked him to tell the truth, which he said he would do. Is that, then, so lacking in any corroboration that it could not go to the jury for the purpose of corroborating Bradley? We think there is clear error in assuming that the testimony of Hurwitz must be bound up with the affidavit and considered as only one piece of testimony. That being so, we have the affidavit as to the false swearing, the corroborating evidence of Hurwitz as to the circumstance of its making and the corroborating evidence of Alexander. It seems to be conceded in the majority opinion that, if the affidavit is to be regarded as the piece of evidence to be corroborated, then the testimony of Alexander is sufficient to go to the jury for that purpose. But if Alexander's testimony is the evidence which is required to be corroborated, then the affidavit is insufficient because Hurwitz's evidence cannot be taken to support it. This is tantamount to saying that if the court looks at the evidence one way it may go to the jury to sustain a conviction, but if it looks at the same evidence in another way it is insufficient. In other words, the same quantity and quality of evidence, seen at one angle may convict, but if turned around at another angle may not. Let us reconstruct this trial from two angles and indulge in some imaginary legal legerdemain. The affidavit stating the false swearing is offered in evidence; Hurwitz testifies as to the circumstances which prompted the confession in it; the testimony of Alexander that he did not sell any liquor, corroborating the false swearing, is received. Now the court submits to the jury the question whether the testimony as to the falsity of the statements made in the hearing before the alderman has been corroborated and charges that if they find sufficient corroboration they should also find the defendant guilty. That is the trial as it was conducted and as, I think, it ought to stand.

Now by an imaginary sleight of hand we have the same evidence turned around. Alexander testifies that he never sold the defendant liquor. The affidavit is then introduced stating that the evidence before the alderman was false and Hurwitz testifies as to the confession and the circumstances. Then the court would tell the jury that Alexander must be corroborated; that the

affidavit of the defendant cannot be relied on for that purpose and that they cannot consider Hurwitz's testimony apart from that affidavit; that perjury being such a serious offense, and the law being very cautious of conviction in such a serious case without abundant corroboration, the case cannot be submitted to the jury. This is the trial as the majority opinion thinks it ought to have been. In my opinion, whether the evidence of Alexander or the affidavit is considered the principal testimony which must be corroborated, there is sufficient for the jury to determine whether there is such corroboration. In the one case, if it is the affidavit, there is the evidence of Hurwitz as to the circumstances under which it is made and the corroborating testimony of Alexander. If it is Alexander who is to be corroborated, there is the affidavit plus the testimony of Hurwitz as to the circumstances which prompted it. In either event, the evidence is sufficient. To hold otherwise makes a big opening for the escape of perjurers. As every judge knows, there is perjury in a large percentage of cases, both civil and criminal. It has become a common offense, though rarely prosecuted. The effect of the majority opinion is to make it easy to escape convictions even though there be prosecutions. This is not the day for coddling criminals. The technical bars of jurisprudence ought not to be raised against conviction of the guilty and the effect of the precedent, if adopted in this case, is to prevent conviction on the mere technicality as to which part of the evidence is to be regarded as the principal evidence to be corroborated.

The majority opinion recognizes the rule herein contended for, and it is not necessary to go beyond the authorities cited in that opinion to show that this rule is abundantly sustained.

The case of Hemphill v. State, 71 Miss. 877, 16 So. 261 (1894), is on all fours with the instant case. Hemphill was charged with perjury in having sworn before the grand jury that he had purchased a bottle of whiskey from one John Weeks. Upon the trial of Weeks, he testified that he had not bought the whiskey, and on his own trial for perjury evidence of the contradictory oaths was given. Weeks was a witness (as Alexander was in the instant case) and testified that he had not sold the whiskey to the defendant. The Supreme Court said:

"The verdict of guilty was, therefore, fully sustained by the evidence, for the conflicting oaths of the appellant, reinforced by the oath of Weeks that the evidence before the grand jury was false, sustained the conviction."

In Dodge v. State, 24 N. J. L. 455, 461 (1854), it is held.

"Proof that the defendant has made statements verbally or in writing, under oath, or not under oath, conflicting with the statement under oath upon which the indictment is founded, is competent evidence on an indictment for perjury, and such evidence, in connection with the testimony of one other witness, has been held sufficient to warrant a conviction."

Precisely the same thing is decided in Powell v. State, 5 Ala. App. 150, 59 So. 328 (1912), where it is said:

"The evidence offered by the state showing incriminating statements made by the defendant, in connection with the positive testimony of the witness Jackson was entirely sufficient to meet the rule that one charged with perjury cannot be convicted on the evidence of one witness without strong corroborating circumstances."

The opinion of the court disposes of the Powell case, and the Dodge case, because there was more than one statement made by the defendant; that is to say, the word "statements" is used in the plural. In the instant case the defendant made more than one statement. He made the statement as to the swearing and a statement as to the selling. It makes little difference whether he made one statement at two different times or two statements at one time.

At any rate, a court should not hang a conviction merely on whether a defendant made a statement at two different times or in the presence of more than one person, regardless of the character of the persons who testify to such statements.

In Schwartz v. Com., 68 Va. 1025, 21 Am. Rep. 365 (1876), the prisoner testified on the trial of one Joseph Turner for rape that he had no conversation or plot with Turner to commit rape upon Pallas Boyd. Upon the Commonwealth's attorney asking that his testimony be written down, there was a pause in the examination, the prisoner retired from the witness stand, and during the intermission stated to several persons that he had just sworn falsely; that he had done so to screen Turner. When he went back to the stand he testified that he had planned with Turner about the girl before they left Manchester. He was indicted for perjury in making the first statement, and the only evidence submitted consisted of the contradictory statements. There was no evidence by any supporting witness, as there is here, the evidence of Hurwitz, and, of course, in this and other cases it is very definitely settled that where there is only oath against oath, one of them must be false, and the jury cannot determine which one is false without corroborating evidence.

In State v. Molier, 12 N. C. 263 (1827), the defendant was indicted for perjury committed on the trial of a case in which the defendant as plaintiff sued one McGhee as defendant for a debt of one dollar for a sieve. Molier swore that he had not given McGhee the sieve and that McGhee owed him for it. On the trial for perjury McGhee swore that Molier had given him the sieve. Two witnesses swore that Molier had said a short time before the delivery of it that he intended to give it to McGhee, and two others swore that a short time thereafter they heard him say that he had given it to him. It was contended that McGhee was the only witness (as the majority opinion puts Alexander in this case), and as the other witnesses proving the declaration were only proving what the defendant said, there was not sufficient corroboration of McGhee to sustain a conviction. But the court held that the evidence satisfied the rule of law. The majority opinion dismisses this case on the ground that the contradictory statements of the defendant were heard by four witnesses. Suppose the four witnesses had been men of worthless character and reputation. Under the majority opinion it would be for the jury, but if the declaration had been heard by one outstanding citizen whose reputation for veracity could not be questioned it must be taken away from the jury, and the rule to be applied is that it is the quantity, and not the quality, of the evidence that counts.

Peterson v. State, 74 Ala. 34, is relied upon by the majority of the court. In that case the charge was that Peterson, on the trial of one Jane Cauthen, a white woman, charged with intermarrying and committing adultery with one Thomas Norris, a negro man, swore that he did not know anything about the intermarrying or adultery. On the trial several members of the grand jury, by whom the indictment was found, testified to inconsistent statements made by Peterson when examined as a witness before the grand jury. That was all the evidence. There was no corroborating circumstance, such as was given by Hurwitz in this case, or the evidence of an independent witness, such as that of Alexander. The discussion in the Peterson opinion, quoted at some length in the majority opinion, is quite apt to the effect that there was only oath against oath, but that opinion fails to quote the portion of the opinion in the Peterson case which indicates that the affidavit of Bradley is testimony which can be corroborated. It is said:

"There is no rule of law which declares that a sworn statement of one charged with perjury, made at another time, different from his testimony which is

charged to be wilfully and corruptly false, and on which his conviction is sought, may not be given in evidence against the accused as tending to sustain the charge made against him. By itself, as we have said, it is not sufficient; for it is only oath against oath, and, at most, would leave the mind in doubt which was the true and which the false version. *It is testimony, however—the testimony either of one witness, or of corroboration—and it cannot be affirmed, as matter of law, that it 'is not sufficient for one of the witnesses.'* Its sufficiency is a question for the jury, under proper instructions." (Italics ours.)

This is the proposition for which we contend, namely, that the statement of Bradley is testimony "either of one witness, or of corroboration," and is "sufficient for one of the witnesses" to be submitted to the jury.

In State *v.* Buckley, 18 Ore. 228, 22 Pac. 838 (1889), the defendant, upon the trial of one Brown, who was charged with assaulting him with a weapon, testified that he did not remember how he was injured or who cut him. On the defendant's trial for perjury the assistant district attorney testified that at the hearing before the magistrate Buckley testified that he did not remember anything about the cutting, and two police officers said that Buckley made statements to them, not under oath, to the effect that Brown did the cutting. In that case there was no other corroborating evidence. The court said (pages 231, 233):

"But it must be observed that the real contention in this case is whether or not the conviction can be sustained on proof of the taking of the oath, the making of the statements upon which the perjury is assigned, followed by proof that at other times the defendant, when not under oath, made statements, the legal effect of which was to contradict his sworn statements, and on that subject the authorities all seem to be one way. . . . There must be at least one witness and corroborating circumstances; that is, one witness testifying to the main fact in issue, and then another witness, or corroborating circumstances, tending to prove the main fact. What is meant by corroborating evidence in this connection is evidence *aliunde*—evidence which tends to show the perjury independent of the prisoner's declarations."

This quotation is relied on in the majority opinion. We also rely upon it. The evidence aliunde which tends to show the perjury independent of the prisoner's declaration is the evidence of Alexander, and the circumstances under which the prisoner made the declarations. This evidence is present in the instant case, and there was no such evidence in the Buckley case.

In State *v.* Hunter, 181 Mo. 316, 80 S. W. 955 (1904), Hunter brought suit against a railroad company for damages for personal injuries received as a passenger. After the verdict a confession was obtained from Hunter admitting, in the presence of several witnesses, that he had secured the judgment on perjured testimony. He was induced to make an affidavit that it had been so obtained and to sign a satisfaction of the judgment. He was subsequently charged with perjury. The court said (page 334):

"And by corroborative evidence is not meant such as emanates from the mouth of the prisoner himself, but evidence *aliunde;* evidence which tends to show the perjury independently of his own admissions or statements. . . . 'The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness.' "

In the case cited the defendant swore that the injury occurred because a car had become darkened and the trainmen ordered him to vacate the darkened car and take the car ahead. The trainmen testified that there was no such order

given and that he did not leave the car for a car ahead. That evidence was held sufficient to justify the verdict. How can this evidence be differentiated from the evidence of Alexander in this case, except that more than one trainman swore to the same facts? Bradley has accused himself and Alexander's testimony is "at least strongly corroborative of the testimony of the accusing witness."

In State v. Blize, 111 Mo. 464, 20 S. W. 210 (1892), the defendant was accused of perjury on the trial of one Knatzer charged with having seduced one Ruah L. Smith. On the Knatzer trial the defendant testified that he had illicit relations with the girl and that she was a girl of bad reputation. This was assigned as perjury, and the issue was whether he had given the testimony and whether it was false. Ruah L. Smith testified that she never had such relations with him and her testimony corresponds to that of Alexander in this case. There was also evidence that, under preliminary examination in the case of Knatzer, the defendant testified that the reputation of the Smith girl was good; that he had known nothing against her. This evidence of the Smith girl and the conflicting statement of the defendant were held to be sufficient to sustain a conviction. We insist this is a case precisely similar to the instant case. The court said (p. 470) :

"Of two contradictory statements one must be false. Taking them together and without other evidence, no presumption arises that either of them was corruptly made. . . . But we think a statement of the accused under oath, directly contradicting the evidence with which he is accused of falsely giving, very strongly corroborative of the evidence of a witness who testifies to its falsity and amply sufficient to sustain a conviction."

In Brooks v. State, 91 Ark. 505, 121 S. W. 740 (1909), Grant Brooks and Hallie Stewart were charged with perjury. Hallie Stewart was indicted for using a room for immoral purposes with one William Brent. Brooks swore he was not at the room on the night when it was alleged that Hallie Stewart and William Brent had used the room for immoral purposes and that he did not see them there together; that he did not knock Hallie Stewart down on that night or have any difficulty with William Brent in that room. On the trial of Brooks the police judge swore that Hallie Stewart had a wound on the bridge of her nose and that her eyes were swollen and discolored. Eliza Brent, the wife of William, testified that she went to see Brooks (as Hurwitz went to Bradley in the instant case) and insisted that Brooks tell her the truth, whereupon he said that her husband was at Hallie Stewart's when he got there and that Hallie Stewart and her husband were in a compromising position. The conviction against Grant Brooks was sustained on this testimony. The testimony of Eliza Brent as to the circumstances of the confession by Brooks is precisely similar to the circumstances of Hurwitz in this case and was properly used as a circumstance in the case to sustain the conviction against Brooks. The court said:

"As to appellant Brooks, however, the testimony of Eliza Brent tending to prove that he admitted being at Hallie Stewart's on the night alleged, and admitted seeing Wm. Brent there and having a fight with him, is sufficient corroboration of the testimony of Wm. Brent that he saw Grant Brooks at the room of Hallie Stewart on the night mentioned, and is sufficient corroboration of the testimony of Wm. Brent as to the falsity of the testimony of Brooks to the effect that he was not at the room of Hallie Stewart on the alleged night and did not see Brent there."

The majority opinion in the instant case dismisses the case just cited with the statement that there were two corroborating witnesses as to the falsity of the defendant's testimony, but the two witnesses are William Brent, who corres-

ponds to Alexander, and Eliza Brent, who exactly corresponds to Hurwitz in that she testifies to the statement of the accused.

In State v. Swafford, 98 Iowa 362, 67 N. W. 284 (1896), the defendant was indicted for perjury in having sworn to a deposition to be used in the trial of one T. E. Murphy charged with seduction of Maud M. Bane that he, Swafford, had illicit relations with her prior to the date of the alleged seduction. On his trial, the defendant reiterated his first testimony, as the defendant did in the instant case, and Maud M. Bane denied the relation, as Alexander denied the sale in the instant case. There was evidence of the admission by defendant as to the falsity of his testimony to one Milton Remley, who was the attorney for Miss Bane, as, in the instant case, there is evidence of the admission to Hurwitz, who was attorney for Alexander. The court found that the evidence was sufficient to sustain a conviction. There were other admissions proven in the case just cited, but those admissions go to the quantity and not to the quality of the proof.

In Davis v. State, 7 Ga. App. 680, 67 S. E. 839 (1910), Davis was the prosecutor against Claude Barnes, charging him with selling whiskey and gaming. On the day after he made the affidavit upon which the warrant was issued, he made another affidavit that he was mad at the time of making the first and that he had never seen Barnes sell whiskey or gamble. On the trial before the magistrate, he testified that he had seen Barnes gambling with several negroes. On the trial for perjury Barnes and several other negroes testified that they had not been gambling, and the defendant repeated his charge and testified that the attorney for Barnes had induced him to retract his first affidavit. Aside from the statements of the other negroes, there is no evidence in the case except that of Barnes which corresponds to Alexander's in the instant case. The court said:

"But the question was for the jury, and the court carefully instructed them not to accept the confession contained in the second affidavit, unless they believed it was freely and voluntarily made by the defendant. The jury having accepted the confession, and giving to it probative value, were authorized to believe that the statement contained in the first affidavit made by the defendant, that Claude Barnes had been guilty of the offense of gaming, was false, and was wilful perjury, and, therefore, that he was guilty as charged in the indictment; for, in addition to this contradictory confession, they had the positive testimony of Claude Barnes that he had not been guilty of gaming . . . and also the specific testimony of several negroes, whom the defendant charged with having participated in the offense of gaming with Claude Barnes, that such was not the truth. *The testimony of Claude Barnes, corroborated by the confession of the defendant, would have been sufficient to authorize the jury to convict;* for the soundness of the rule has never been questioned, that where there is one witness to prove a contrary state of facts, the confession of the defendant, contradicting the statement made by him on oath, renders unnecessary any additional evidence." (Italics ours.)

In the instant case, there is the testimony of the one witness, Alexander, to prove the contradictory state of facts, and, therefore, the confession of the defendant with the surrounding circumstances under which it was made is abundant to go to the jury.

In 1 Whart. Crim. Ev. (10th ed.), page 791, it is said: "The testimony of a witness to falsity is sufficiently sustained by a written admission of the defendant."

A number of English and American cases other than those to which we have heretofore referred have been cited as supporting the text.

In 2 Whar. Crim. Law (12th ed.), Sec. 1585, page 1839, it is also said:

"One witness may be adequately sustained by the defendant's own letters and declarations, by his own admission as a witness on the stand, as well as by independent admissible corroborative material facts."

We have not found it necessary to go outside of the cases cited by the majority opinion to demonstrate the fallacy of the position taken in that opinion. We fail to find any case that holds that a confessing statement of the defendant, together with the corroborative circumstance under which the confession was made, supported by independent testimony aliunde, of the person directly involved in the facts concerning which the perjury is assigned, is insufficient to take the case to the jury. In our opinion, it makes no difference that the defendant on his perjury trial reiterated one of his previous statements. That situation is found in a number of cases above referred to. It may be, as said in State *v.* Hunter, supra, (page 338) : "No matter by how many witnesses the different and conflicting statements may be proved, that is not corroborative proof of the *corpus delicti*," but in the instant case we have the supporting testimony aliunde of Alexander.

For these reasons I think the evidence was sufficient to sustained a conviction and, therefore, indicated my dissent in this case.

From Homer L. Kreider, Harrisburg, Pa.